588 So.2d 957 (1991)
DEPARTMENT OF LAW ENFORCEMENT, Appellant,
v.
REAL PROPERTY, etc., Appellee.
Nos. 77,308, 77,309, 77,310, 77,311 and 77,312.
Supreme Court of Florida.
August 15, 1991.
Rehearing Dismissed Voluntarily December 2, 1991.
*958 Robert A. Butterworth, Atty. Gen., Keith Vanden Dooren, Diana K. Bock and Jeanne Clougher, Asst. Attys. Gen., Tallahassee, and Parker Thomson, Special Asst. Atty. Gen., Miami, for appellant.
Robert S. Griscti of Turner & Griscti, Gainesville, for Cedar Key Mobile Home Village, Inc., Cedar Key Flying Club Sites, Inc., Cedarwood Estates, Inc., Cedar Key Hunting & Game Preserve, Inc., Cedar Key Campsites, Inc. and Charles L. DeCarlo.
Albert C. Simmons and David G. White, Cedar Key, for Walter G. Gifford and Marlene M. Gifford.
George N. Aylesworth, Senior Bureau Commander and Robert Knabe, Police Legal Advisor, Metro-Dade Police Dept., Miami, amicus curiae for Florida Sheriff's Ass'n, Florida Police Chief's Ass'n, Dade County Ass'n of Chiefs of Police, and Florida Ass'n of Police Attorneys.
Arthur I. Jacobs, Fernandina Beach, amicus curiae for Florida Pros. Attys. Ass'n, Inc.
Larry G. Turner, President, FACDL, Gainesville, and Robert A. Harper, Jr., Chairman, FACDL, Tallahassee, amicus curiae for Florida Ass'n of Criminal Defense Lawyers.
BARKETT, Justice.
We have on appeal an order of the Eighth Judicial Circuit, in and for Levy County, Florida, in which the court declared *959 unconstitutional the Florida Contraband Forfeiture Act, sections 932.701-.704 of the Florida Statutes (1989) (the Act). The order was appealed to the First District Court of Appeal where a split panel, without deciding the merits, certified the issue to this Court as a matter of great public importance requiring immediate resolution.[1]Florida Dep't of Law Enforcement v. Real Property Including Any Building, Appurtenances, etc., No. 91-23 (Fla. 1st DCA Jan. 29, 1991). We hold that the Act is facially constitutional provided that it is applied consistent with the minimal due process requirements of the Florida Constitution as set forth in this opinion.

I. THE FACTS
Charles DeCarlo was arrested on drug trafficking charges on May 15, 1990, stemming from a reverse sting operation conducted by appellant Florida Department of Law Enforcement (FDLE) and the Levy County Sheriff's Department. On May 16, the state initiated forfeiture proceedings in circuit court against certain properties that were described by the court as follows:
No. 77-308 An entire 60-acre tract of land, part of which includes an extension of an airstrip.
No. 77-309 An R/V mobile home subdivision of more than 40 acres, with numerous full R/V hookups, a bath house, a restaurant, and other improvements.
No. 77-310 An entire 280-acre subdivision platted on to more than 200 separate lots.
No. 77-311 An entire 100-acre platted subdivision of approximately 1-acre parcels, including an air strip and other improvements.
No. 77-312 Personal residence and property, including garages, sheds and other improvements.
Based solely on an affidavit executed by an FDLE special agent, the circuit court on May 16 issued warrants to seize the aforementioned properties. The state that day also filed a notice of lis pendens against those properties and petitioned for a rule to show cause why the properties should not be forfeited.[2]
The petition for a rule to show cause was opposed by claimants Charles DeCarlo; Cedar Key Mobile Home Village, Inc.; Cedar Key Flying Club, Inc.; Cedarwood Estates, Inc.; Cedar Key Hunting and Game Preserve, Inc.; Walter G. Gifford; and Marlene M. Gifford. The claimants moved to dismiss the petitions on constitutional grounds. The circuit court consolidated the cases and granted the claimants' motions to dismiss,[3] concluding that the Act, as amended in 1989, facially violates due process guarantees of the federal and state constitutions for the following reasons: (1) As a penal sanction, the Act fails to provide adequate substantive due process required of penal statutes; (2) if not purely penal, the Act is quasi-criminal and fails to provide the requisite procedural guidelines; and (3) the Act is void for vagueness, requiring parties to guess the proper procedures and protections, and insufficiently requires notice as to what specific property is subject to forfeiture. The FDLE appealed the dismissal, and we accepted jurisdiction to resolve a matter of first impression before this Court.[4]
*960 The parties here do not question the validity of forfeiture statutes per se, hence we do not explore the history and nature of the subject. Rather, the issue in this case concerns whether the Florida Contraband Forfeiture Act, as amended in 1989, comports with due process of law.

II. THE DUE PROCESS REQUIREMENT
The basic due process guarantee of the Florida Constitution provides that "[n]o person shall be deprived of life, liberty or property without due process of law." Art. I, § 9, Fla. Const. Substantive due process under the Florida Constitution protects the full panoply of individual rights from unwarranted encroachment by the government. To ascertain whether the encroachment can be justified, courts have considered the propriety of the state's purpose; the nature of the party being subjected to state action; the substance of that individual's right being infringed upon; the nexus between the means chosen by the state and the goal it intended to achieve; whether less restrictive alternatives were available; and whether individuals are ultimately being treated in a fundamentally unfair manner in derogation of their substantive rights. Substantive due process may implicate, among other things, the definition of an offense, see State v. Bussey, 463 So.2d 1141 (Fla. 1985); Baker v. State, 377 So.2d 17 (Fla. 1979); the burden and standard of proof of elements and defenses, see, e.g., State v. Cohen, 568 So.2d 49, 51 (Fla. 1990); the presumption of innocence, see State v. Rodriguez, 575 So.2d 1262 (Fla. 1991); State v. Harris, 356 So.2d 315, 317 (1978); vagueness, see, e.g., Perkins v. State, 576 So.2d 1310 (Fla. 1991); Bussey; State v. Barquet, 262 So.2d 431, 436 (Fla. 1972); the conduct of law enforcement officials, see Haliburton v. State, 514 So.2d 1088 (Fla. 1987); State v. Glosson, 462 So.2d 1082 (Fla. 1985); the right to a fair trial, see Kritzman v. State, 520 So.2d 568 (Fla. 1988); and the availability or harshness of remedies, see In re Forfeiture of 1976 Kenworth Tractor Trailer Truck, 576 So.2d 261 (Fla. 1990); Roush v. State, 413 So.2d 15 (Fla. 1982).[5]
Procedural due process serves as a vehicle to ensure fair treatment through the proper administration of justice where substantive rights are at issue. Procedural due process under the Florida Constitution
guarantees to every citizen the right to have that course of legal procedure which has been established in our judicial system for the protection and enforcement of private rights. It contemplates that the defendant shall be given fair notice[] and afforded a real opportunity to be heard and defend[] in an orderly procedure, before judgment is rendered against him.
State ex rel. Gore v. Chillingworth, 126 Fla. 645, 657-58, 171 So. 649, 654 (1936) (citations omitted); accord, e.g., Fuentes v. Shevin, 407 U.S. 67, 80, 92 S.Ct. 1983, 1994, 32 L.Ed.2d 556 (1972) (procedural due process under the fourteenth amendment of the United States Constitution guarantees notice and an opportunity to be heard at a meaningful time and in a meaningful manner). The manner in which due process protections apply vary with the character of the interests and the nature of the process involved. Hadley v. Department of Admin., 411 So.2d 184, 187 (Fla. 1982); accord Mathews v. Eldridge, 424 U.S. 319, 334, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976). There is no single, inflexible test by which courts determine whether the requirements of procedural due process have been met. Hadley, 411 So.2d at 187.
While the doctrines of substantive and procedural due process play distinct roles in the judicial process, they frequently overlap. Hence, many cases do not expressly state the distinction between procedural and substantive due process. See, e.g., State v. Rodriguez, 575 So.2d 1262 (Fla. 1991) (in criminal cases the state must provide notice of each essential element and proof beyond a reasonable doubt); accord, e.g., In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).

*961 III. CONSTRUING THE PROCESS EXPRESSLY PROVIDED IN THE ACT
The process provided in the Act[6] enables the state to seize property  whether real or personal  "which has been or is being used" to commit one of the enumerated offenses, or "in, upon or by means of which" any enumerated violation "has taken or is taking place." § 932.703(1), Fla. Stat. (1989). The Act can be read to mean that seizure immediately ousts property owners or lienholders of any right or interest they have in the subject property. Id.[7] After seizure, the state must "promptly proceed" against the property "by rule to show cause in the circuit court," and may have the property forfeited "upon producing due proof" that the property was being used in violation of the Act. Id. § 932.704(1). If the state does not initiate proceedings within ninety days after the seizure, the claimant may maintain an action to recover the property. Id. § 932.703(1). The state is required to give notice of forfeiture proceedings by registered mail and publication only if the seizing agency actually knows the identity of the owner, or if the property is required to be registered, or if it is subject to a perfected security interest; however the requirement for notice by mail is waived with respect to perfected security interests if the owner cannot be ascertained after diligent search and inquiry by the seizing agency. Id. § 932.704(2). If the property cannot be easily ascertained or reached, the court shall order the forfeiture of any other property of the "defendant" up to the value of any property subject to forfeiture. Id. § 932.703(1)[8] Owners may raise a defense only after the property has been seized, and they must bear the burden in forfeiture proceedings of proving that they neither knew, nor should have known after a reasonable inquiry, that the property was being used or was likely to be used to commit an enumerated crime. Id. § 932.703(2). Lienholders who can establish their perfected interests also may raise a defense only after seizure, and they bear the same burden as property owners plus an additional burden of proving that they did not consent to having the property used to commit a crime. Id. § 932.703(3). At some point, the court is to issue a "final order of forfeiture" perfecting title in the seizing agency relating back to the date of seizure. Id. § 932.704(1). Legal title to the property, or proceeds derived from the property after satisfaction of bona fide liens, are then transferred to an agency or fund as set forth in the Act. Id. § 932.704(3).
The Act raises numerous constitutional concerns that touch upon many substantive and procedural rights protected by the Florida Constitution. In construing the Act, we note that forfeitures are considered harsh exactions, and as a general rule they are not favored either in law or equity. Therefore, this Court has long followed a policy that it must strictly construe forfeiture statutes. See, e.g., General Motors Acceptance Corp. v. State, 152 Fla. 297, 302, 11 So.2d 482, 484 (1943); City of Miami v. Miller, 148 Fla. 349, 350, 4 So.2d 369, 370 (1941). Strict construction, however, may clash with the traditional judicial policy that all doubts as to the validity of a statute are to be resolved in favor of constitutionality where reasonably possible. See, e.g., State v. Rodriguez, 365 So.2d 157 (Fla. 1978). While this Court is obliged to establish rules to enforce the provisions of the Florida and federal constitutions in the courts of this state, it may not transgress the proscription of article II, section 3 of the Florida Constitution, which forbids one *962 of the branches of government from invading the province of another.[9]
In light of these concerns, we must ascertain whether the Act can reasonably be construed to comport with minimal due process requirements. The process of forfeiture actions involves two major components: (1) the initial restraint on property, by seizure or otherwise, to ensure that the property will be available if it is found to be forfeitable; and (2) the forfeiture itself, whereby a court must determine if the property was in fact used to violate the law under the controlling statutes, and if so, who under the law is entitled to acquire legal title to the property.[10]

1. Initial restraint on property
The only action expressly authorized by the Act to initiate forfeiture is the actual seizure of the subject property, see section 932.704(1), an extreme measure because seizure effectively ousts an individual from all rights concerning the property,[11] producing particularly harsh consequences where a residence is at issue. The Act does not speak to any lesser forms of property restraint, such as a notice of lis pendens (which was used in the instant case), a restraining order, or a bond requirement. The Act does not distinguish between seizing interests in personal property from seizing interests in real property, which is substantially different in character and may be adequately restrained by less restrictive means. The Act does not provide for any preseizure notice to the property owner or lienholder with an opportunity to be heard; nor does it provide any procedures for the seizure itself, including the standard or burden of proof.
Some of these constitutional concerns have been addressed by recent federal due process decisions that we find highly persuasive and reflective of the principles embodied in the Florida Constitution.[12] Two opinions are particularly noteworthy: United States v. Premises & Real Property at 4492 South Livonia Rd., 889 F.2d 1258 (2d Cir.1989) (Livonia Road); and United States v. Monsanto, 924 F.2d 1186 (2d Cir.1991) (en banc).
In Livonia Road, the government filed a notice of lis pendens and got an ex parte seizure warrant one day after it filed a forfeiture complaint against a parcel of real property, which contained a person's home. In reviewing the propriety of the seizure, the court held that the government may not seize real property containing a person's home in a forfeiture through an ex parte seizure warrant without first giving the home owner notice or an opportunity to be heard in an adversarial proceeding. Accord United States v. Leasehold Interest in Property Located at 850 S. Maple, 743 F. Supp. 505 (E.D.Mich. 1990); United States v. Parcel I, Beginning at a Stake, 731 F. Supp. 1348 (S.D.Ill. 1990).[13] The *963 court focused on two substantial constitutional principles: (1) the general principle that due process forbids the government from taking any property without notice and an opportunity to be heard unless the facts pose an extraordinary situation to justify postponing notice and hearing until after the seizure, Livonia Road, 889 F.2d at 1263-64 (citing Fuentes v. Shevin, 407 U.S. 67, 92, 92 S.Ct. 1983, 2000, 32 L.Ed.2d 556 (1972)); and (2) the special significance of a person's residential property, because "an individual's expectation of privacy and freedom from governmental intrusion in the home merits special constitutional protection." Id. at 1264. Balancing the interests under the principles of Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), the court put great weight on an individual's property interests; found that preseizure notice and an opportunity to be heard would minimize the risk of erroneous deprivation at little or no additional burden to the state; and determined that exigent circumstances are unlikely where real property is at issue because it cannot be readily moved or dissipated. "Any exigency that might be posed by the threat of an encumbrance on, or transfer of, the property may be met by less restrictive means than seizure, for example, by the filing of a lis pendens, as was done in this case, along with a restraining order or bond requirement." Livonia Road, 889 F.2d at 1265; cf. Connecticut v. Doehr, ___ U.S. ___, 111 S.Ct. 2105, 115 L.Ed.2d 1 (1991) (prejudgment attachment of real property without prior notice or hearing, without a showing of extraordinary circumstances, and without a requirement that the person seeking the attachment post a bond, violates due process).
Much of the same rationale was applied in Monsanto, where a federal grand jury indictment charged Monsanto with various offenses and alleged that his home, an apartment, and $35,000 in cash were subject to forfeiture. Upon indictment and at the government's request, the court issued an ex parte restraining order prohibiting Monsanto from directly or indirectly transferring or encumbering the home or apartment. The circuit court approved the use of a restraining order, which, rather than ousting the owner of all rights with regard to the property, merely "`operates to remove the assets from the control of the defendant on the claim of the government that it has a higher right to those assets.'" Monsanto, 924 F.2d at 1192 (quoting United States v. Moya-Gomez, 860 F.2d 706, 725 (7th Cir.1988), cert. denied, 492 U.S. 908, 109 S.Ct. 3221, 106 L.Ed.2d 571 (1989)). A restraining order, like the notice of lis pendens in Livonia Road, preserves the availability of potentially forfeitable assets. Thus, the circuit court held that because probable cause had already been established through a grand jury indictment, the court was free to issue an ex parte restraining order on real property before the owners and lienholders had been given notice and an opportunity to be heard. However, the court said the right to have notice and a hearing weigh heavily when property interests are being taken under these circumstances. Therefore, it held that after a trial court issues an ex parte restraining order  which is even less restrictive than a seizure  the court must provide notice and an adversarial hearing to reexamine probable cause to determine de novo whether or not the government is entitled to continue its restraint on the property throughout the pretrial process.
Turning to the Act under review, the state's argument as to the initial restraint on property focused on the fourth amendment of the United States Constitution. The state conceded at oral argument that the fourth amendment applies to the seizure of property in forfeiture actions, and argued that fourth amendment protections adequately protect property owners. We fully agree that the fourth amendment applies when there has been a seizure;[14] however, the state's reliance on fourth amendment principles misses the point. The issue of initial property restraint focuses *964 on (1) whether due process requires the state to use means less restrictive than seizure, if possible, to protect the respective interests and safeguard the constitutional rights being impinged; and (2) whether seizure or other forms of property restraint are constitutionally permissible in the absence of notice and an opportunity to be heard in an adversarial forum. Even temporary or partial impairments to property rights are sufficient to merit due process protection. Connecticut v. Doehr, ___ U.S. ___, 111 S.Ct. 2105, 115 L.Ed.2d 1 (1991). As the Monsanto and Livonia Road opinions expressed, seizure may be a harsh, extreme, and unnecessary way to restrain an owner or lienholder from using or disposing of potentially forfeitable property when there are less restrictive means available, especially when no notice or hearing is provided.
In evaluating the due process concerns,[15] it is clear that individuals have compelling interests to be heard at the initiation of forfeiture proceedings against their property rights to assure that there is probable cause to believe that a person committed a crime using that property to justify a property restraint. Property rights are among the basic substantive rights expressly protected by the Florida Constitution. Art. I, § 2, Fla. Const.; see Shriners Hosps. for Crippled Children v. Zrillic, 563 So.2d 64, 68 (Fla. 1990) (article I, section 2 protects all incidents of property ownership from infringement by the state unless regulations are reasonably necessary to secure the health, safety, good order, and general welfare of the public). Those property rights are particularly sensitive where residential property is at stake, because individuals unquestionably have constitutional privacy rights to be free from governmental intrusion in the sanctity of their homes and the maintenance of their personal lives. Art. I, §§ 2, 12, 23, Fla. Const. Additionally, Floridians have substantive rights to be free from excessive punishments under article I, section 17 of the Florida Constitution, and to have meaningful access to the courts pursuant to article I, section 21 of the Florida Constitution. All of these substantive rights necessarily must be protected by procedural safeguards including notice and an opportunity to be heard. Art. I, § 9, Fla. Const.; see Hadley v. Department of Admin., 411 So.2d 184 (Fla. 1982); State ex rel. Gore v. Chillingworth, 126 Fla. 645, 657-58, 171 So. 649, 654 (1936).
Just as we recognize the significance of the interests of property owners and lienholders, we also recognize that the state has substantial interests in restraining the use of potentially forfeitable property to punish criminal wrongdoers; to seek retribution for society; to deter continued use of the property for criminal activity; to remedy the wrongs done to society; and to compensate the state for its law enforcement services.
However, the means by which the state can protect its interests must be narrowly tailored to achieve its objective through the least restrictive alternative where such basic rights are at stake. Art. I, § 9, Fla. Const. Thus, due process under article I, section 9 requires the state to protect against the disposal of potentially forfeitable property pending final trial on the forfeiture by means less restrictive than seizure where feasible under the circumstances.[16] For example, the state can *965 use a notice of lis pendens, a property bond, a restraining order, or a combination thereof. Due process also requires notice and the opportunity for those claiming an interest in the property to be heard throughout the forfeiture process. Art. I, § 9, Fla. Const.
It is clear that real and personal property are substantially different both in the interests of the parties involved and in the ability of owners or lienholders to dispose of their interests. Therefore, the manner in which due process applies to the preliminary restraint, notice, and hearing requirements varies when distinguishing between the forfeiture of interests in real and personal property.
Regarding matters of real property, due process requires that the state must provide notice and schedule an adversarial hearing for interested parties on the question of probable cause prior to any initial restraint, other than lis pendens, on the real property being subjected to forfeiture. To comply with due process, a real property forfeiture action under the Act would begin with the state's filing of a petition for rule to show cause in the circuit court where the property is located or where the crime is alleged to have taken place. Simultaneously, the state would record a notice of its petition with the property records of the appropriate clerk of court's office, which will serve as a lis pendens.[17] This recordation shall be deemed a constructive "seizure" for purposes of commencing a forfeiture action under the Act. The state would immediately schedule an adversarial preliminary hearing to determine if probable cause exists to maintain the forfeiture action, and to resolve all questions pertaining to the temporary restraints on the real property pending final disposition. Notice of the petition and the adversarial preliminary hearing must be served on all interested parties. If probable cause is found at the adversarial preliminary hearing, the court may, at its discretion, enter such orders as are necessary to protect the respective interests of the parties. This preliminary stage should, of course, be expeditiously completed to protect the rights of all the parties. We would anticipate that the adversarial hearing will take place within ten days of the filing of the petition.
Regarding matters of personal property, due process permits the state to seize personal property prior to notice or an opportunity for a hearing, provided that notice is sent and the opportunity for an adversarial preliminary hearing is made available as soon as possible after seizure. We envision that this situation will arise in two types of circumstances: when the state has not yet taken possession of the property; and when the state already has lawfully taken possession of the property, such as evidence seized while making an arrest.
In those situations where the state has not yet taken possession of the personal property that it wishes to be forfeited, the state may seek an ex parte preliminary hearing. At that hearing, the court shall authorize seizure of the personal property if it finds probable cause to maintain the forfeiture action. In those situations where a law enforcement agency already has lawfully taken possession of personal property during the course of routine police action, the state has effectively made an ex parte seizure for the purposes of initiating a forfeiture action.
After the ex parte seizure of personal property, the state must immediately notify all interested parties that the state has taken their property in a forfeiture action; and that they have the right to request a postseizure adversarial preliminary hearing. If requested, the preliminary hearing shall be held as soon as is reasonably possible to make a de novo determination as to whether probable cause exists to maintain the forfeiture action; and to determine *966 whether continued seizure of the property is the least restrictive means warranted by the circumstances to protect against disposal of the property pending final disposition. Again, as with real property forfeitures, this initial stage should be expeditiously completed, and we anticipate that the adversarial preliminary hearing, if requested, will take place within ten days of the request.
In all forfeiture cases, due process under article I, section 9 of the Florida Constitution requires that notice shall be served on all persons whom the agency knows, or with reasonable investigation should know, have a legal interest in the subject property. Notice shall advise those persons that a forfeiture action is pending against the particular property or properties. In real property forfeiture actions, notice must advise interested parties of the time and place for which the preliminary adversarial hearing has been scheduled. In personal property forfeiture actions, notice must advise interested parties that they have a right to an adversarial preliminary hearing upon request.
In this preliminary stage of real and personal property forfeitures, due process requires the state to establish probable cause to believe that the property was used in the commission of a crime pursuant to the terms of the Act. Art. I, § 9, Fla. Const. If the state establishes probable cause, the court shall order the property restrained throughout the pendency of the forfeiture action by the least restrictive means necessary under the circumstances. Under no circumstances may the state continue its restraint on the property pending final disposition unless notice and an opportunity to be heard in an adversarial proceeding are provided to all potential claimants. Art. I, § 9, Fla. Const.

2. Litigation of forfeiture action
The Act provides that after the property is first seized, the state must file a petition for a rule to show cause in the circuit court, and upon producing due proof that the property was used in violation of the Act, the court shall issue a final order of forfeiture vesting legal title in the appropriate agency under the Act. However, that is the sum total of direction given by the Act. The Act does not set out any procedures for filing the petition or issuing the rule to show cause, except that a rule shall issue upon the showing of "due proof." § 932.704(1), Fla. Stat. (1989). The Act does not address any requirements for filing the petition; which procedural rules should apply to control the litigation; what standard and burden of proof is "due" for issuance of the rule; whether a trial  with or without a jury  is required to decide the merits of the action once the rule has been issued; what standard and burden of proof apply in deciding the ultimate issue, including defenses; and whether and how property is to be divided or partitioned to ensure that only the "guilty" property is forfeited. As the Fourth District Court appropriately characterized the Act, forfeiture proceedings are "procedural quagmires on account of the failure of the statute to provide measures to be followed other than to say `... by rule to show cause in the circuit court.'" In re Forfeiture of United States Currency in the Amount of Five Thousand Three Hundred Dollars ($5,300.00), 429 So.2d 800, 801-02 (Fla. 4th DCA 1983); see also One 1978 Green Datsun Pickup Truck v. State ex rel. Manatee County, 457 So.2d 1060, 1061 (Fla. 2d DCA 1984) (describing forfeiture proceedings as "murky"); In re Forfeiture of 1975 Mercedes Benz 450 SL, 455 So.2d 498, 499 (Fla. 4th DCA 1984) (dismissal of complaint was premature "no doubt due to the absence of a clearly established procedure to be followed in forfeiture proceedings"); Famiglietti v. State ex rel. Broward County, 382 So.2d 767 (Fla. 4th DCA 1980) (Anstead, J., dissenting), dismissed, 386 So.2d 636 (Fla. 1980).
The forfeiture practice of courts in this state has been largely established by case law in the absence of formal direction. In re Forfeiture of Six Video Draw Poker Machines, 544 So.2d 1097 (Fla. 1st DCA 1989); see In re Approximately Forty-Eight Thousand Nine Hundred Dollars ($48,900.00), 432 So.2d 1382 (Fla. 4th DCA 1983); In re Forfeiture of United States *967 Currency in the amount of Five Thousand Three Hundred Dollars ($5,300.00); see also, e.g., Willie v. Castro, 490 So.2d 250 (Fla. 4th DCA 1986). We conclude that the following procedures drawn from various district court decisions are in accord with the Act, existing rules, and minimal requirements of due process, and thus shall be followed in the courts of this state. The agency seeking forfeiture may file its complaint by applying for the issuance of a rule to show cause in the circuit court of jurisdiction where the property was restrained or where the alleged offense occurred. The petition must be verified and supported by affidavit. If the court determines that the petition on its face sufficiently states a cause of action for forfeiture, the court shall sign and issue the rule. A copy of the petition and the rule shall be served on all persons whom the agency knows, or with reasonable investigation should know, have a legal interest in the property. The rule to show cause also shall require that responsive pleadings and affirmative defenses be filed within twenty days of service of the rule to show cause. As stated above, in real property forfeiture actions the state shall give notice to interested parties as to the time and place for which the adversarial preliminary hearing has been scheduled; and in personal property forfeiture actions, the state must notify interested parties that they have a right to an adversarial preliminary hearing upon request. The Florida Rules of Civil Procedure shall otherwise control service of process, discovery, and other measures appropriate for the administration of forfeiture proceedings.
It is now well settled that the ultimate issue of forfeiture must be decided by jury trial unless claimants waive that right. Art. I, § 22, Fla. Const.; see In re Forfeiture of 1978 Chevrolet Van, 493 So.2d 433 (Fla. 1986). That substantive right is also subsumed within article I, section 9 of the Florida Constitution. However, the issue of standard and burden of proof has not been previously addressed by this Court. The state argues that the agency seeking forfeiture need establish its case by at most a preponderance of the evidence, whereas the claimants argue that the constitution requires proof beyond a reasonable doubt, or alternatively, by clear and convincing evidence. Case law reflects no uniformity in this state as to the appropriate burden and standard of proof. See In re Approximately Forty-Eight Thousand Nine Hundred Dollars ($48,900.00), 432 So.2d at 1382; In re Forfeiture of One 1976 Chevrolet Corvette, 442 So.2d 307 (Fla. 5th DCA 1983), review denied, 451 So.2d 849 (Fla. 1984); Marks v. State, 416 So.2d 872 (Fla. 5th DCA 1982).
We conclude that the state has the burden of proof at trial, which should be by no less than clear and convincing evidence. The state and the decisions on which it relies fail to recognize the significance of the constitutionally protected rights at issue and the impact forfeiture has on those rights. In forfeiture proceedings the state impinges on basic constitutional rights of individuals who may never have been formally charged with any civil or criminal wrongdoing. This Court has consistently held that the constitution requires substantial burdens of proof where state action may deprive individuals of basic rights. For example, when an individual is charged with a crime, the government cannot deprive that person of life, liberty, or property unless it carries the burden of proof beyond every reasonable doubt as to each essential element. E.g., State v. Cohen, 568 So.2d 49, 51 (Fla. 1990); accord In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). In noncriminal contexts, this Court has held that constitutionally protected individual rights may not be impinged with a showing of less than clear and convincing evidence. See Padgett v. Department of Health & Rehab. Servs., 577 So.2d 565 (Fla. 1991) (clear and convincing evidence required for termination of parental rights); In re Guardianship of Browning, 568 So.2d 4 (Fla. 1990) (clear and convincing evidence required before a surrogate can exercise an incompetent patient's right to terminate life support); In re Bryan, 550 So.2d 447 (Fla. 1989) (clear and convincing evidence required to deprive an individual of basic property rights *968 through a determination of incompetency); Nodar v. Galbreath, 462 So.2d 803, 806 (Fla. 1984) (public official or public figure must prove actual malice by clear and convincing evidence to impinge on first amendment rights in a defamation suit); accord Gertz v. Robert Welch, Inc., 418 U.S. 323, 342, 94 S.Ct. 2997, 3008, 41 L.Ed.2d 789 (1974); see also, e.g., Downing v. Bird, 100 So.2d 57, 64 (Fla. 1958) (in adverse possession cases, the claimant must show "by clear, definite and accurate proof" that the adverse possession of property continued for the full period required by Florida law).
Accordingly, "due proof" under the Act constitutionally means that the government may not take an individual's property in forfeiture proceedings unless it proves, by no less than clear and convincing evidence, that the property being forfeited was used in the commission of a crime. Art. I, § 9, Fla. Const. Lack of knowledge of the holder of an interest in the property that the property was being employed in criminal activity is a defense to forfeiture, which, if established by a preponderance of the evidence, defeats the forfeiture action as to that property interest. Art. I, § 9, Fla. Const. Forfeiture must be limited to the property or the portion thereof that was used in the crime. Art. I, §§ 9, 17, Fla. Const. If a verdict favoring forfeiture satisfies the requirements of law, the court shall issue a final order of forfeiture, disposing of the property in accordance with law.

IV. CONCLUSION
This Court is obliged and authorized to establish rules to enforce the Florida Constitution and to administer the courts of this state. Although we are concerned with the multitude of procedural deficiencies in the Act, the procedures described above are required to satisfy due process and are not inconsistent with the language and intent of the Act. We conclude that the Act can be reasonably construed as constitutional provided that it is applied consistent with the due process requirements summarized in this opinion.
Turning to the facts of this case, it is clear that the state did not comply with due process: It seized real property, including residential property, prior to giving the claimants any notice or opportunity to be heard. Accordingly, we affirm the result reached by the circuit court in dismissing the forfeiture action. However, for the reasons stated above, we reverse the circuit court's conclusion that the Act is facially unconstitutional in violation of due process of law. This cause is remanded to the circuit court for proceedings consistent with this opinion.
It is so ordered.
SHAW, C.J., and OVERTON, McDONALD, GRIMES, KOGAN and HARDING, JJ., concur.

APPENDIX

 The Florida Contraband Forfeiture Act, sections 932.701-.704 of
the Florida Statutes (1989), provides as follows:
 932.701. Short title; definition of "contraband article". 
 (1) Sections 932.701-932.704 shall be known and may be cited as
the "Florida Contraband Forfeiture Act."
 (2) As used in ss. 932.701-932.704, "contraband article" means:
 (a) Any controlled substance as defined in chapter 893 or any
substance, device, paraphernalia, or currency or other means of
exchange which has been, is being, or is intended to be used in
violation of any provision of chapter 893.
 (b) Any gambling paraphernalia, lottery tickets, money, and
currency used or intended to be used in the violation of the
gambling laws of the state.
 (c) Any equipment, liquid or solid, which is being used or
intended to be used in violation of the beverage or tobacco laws
of the state.
 (d) Any motor fuel upon which the motor fuel tax has not been
paid as required by law.
 (e) Any personal property, including, but not limited to, any
item, object, tool, substance, device, weapon, machine, vehicle
of
*969 any kind, money, securities, books, records, research,
negotiable instruments, or currency, which has been or is
actually employed as an instrumentality in the commission of, or
in aiding or abetting in the commission of, any felony, or which
is acquired by proceeds obtained as a result of a violation of
the Florida Contraband Forfeiture Act.
 (f) Any real property or any interest in real property which
has been or is being employed as an instrumentality in the
commission of, or in aiding or abetting in the commission of, any
felony, or which is acquired by proceeds obtained as a result of
a violation of the Florida Contraband Forfeiture Act.
 932.702. Unlawful to transport, conceal, or possess contraband
articles or to acquire real or personal property with contraband
proceeds; use of vessel, motor vehicle, aircraft, or real
property.  It is unlawful:
 (1) To transport, carry, or convey any contraband article in,
upon, or by means of any vessel, motor vehicle, or aircraft.
 (2) To conceal or possess any contraband article in or upon any
vessel, motor vehicle, aircraft, or real property.
 (3) To use any vessel, motor vehicle, aircraft, or real
property to facilitate the transportation, carriage, conveyance,
concealment, receipt, possession, purchase, sale, barter,
exchange, or giving away of any contraband article.
 (4) To conceal or possess any contraband article.
 (5) To acquire real or personal property by the use of proceeds
obtained in violation of the Florida Contraband Forfeiture Act.
 932.703. Forfeiture of vessel, motor vehicle, aircraft, other
personal property, real property, or contraband article;
exceptions. 
 (1) Any vessel, motor vehicle, or aircraft; any other personal
property; and any real property which has been or is being used
in violation of any provision of s. 932.702, or in, upon, or by
means of which any violation of that section has taken or is
taking place, as well as any contraband article involved in the
violation, may be seized and shall be forfeited subject to the
provisions of this act. All rights and interest in and title to
contraband articles or contraband property used in violation of
s. 932.702 shall immediately vest in the state upon seizure by a
law enforcement agency, subject only to perfection of title,
rights, and interests in accordance with this act. Neither
replevin nor any other action to recover any interest in such
property shall be maintained in any court, except as provided in
this act; however, such action may be maintained if forfeiture
proceedings are not initiated within 90 days after the date of
seizure. In any incident in which possession of any contraband
article defined in s. 932.701(2)(a)-(d) constitutes a felony, the
vessel, motor vehicle, aircraft, personal property, or real
property in or on which such contraband article is located at the
time of seizure shall be contraband subject to forfeiture. It
shall be presumed in the manner provided in s. 90.302(2) that the
vessel, motor vehicle, aircraft, personal property, or real
property in or on which such contraband article is located at the
time of seizure is being used or was intended to be used in a
manner to facilitate the transportation, carriage, conveyance,
concealment, receipt, possession, purchase, sale, barter,
exchange, or giving away of a contraband article defined in s.
932.701(2). If any of the property described in this subsection:
 (a) Cannot be located;
 (b) Has been transferred to, sold to, or deposited with, a
third party;
 (c) Has been placed beyond the jurisdiction of the court;
 (d) Has been substantially diminished in value by any act or
omission of the defendant; or
 (e) Has been commingled with any property which cannot be
divided without difficulty, the court shall order the forfeiture
of any other property of the defendant up to the value of any
property subject to forfeiture under this section.
*970 (2) No property shall be forfeited under the provisions of ss.
932.701-932.704 if the owner of such property establishes that he
neither knew, nor should have known after a reasonable inquiry,
that such property was being employed or was likely to be
employed in criminal activity. Property titled or registered
jointly between husband and wife by use of the conjunctives
"and," "and/or," or "or" shall not be forfeited if the coowner
establishes that he neither knew, nor should have known after a
reasonable inquiry, that such property was employed or was likely
to be employed in criminal activity.
 (3) No bona fide lienholder's interest shall be forfeited under
the provisions of ss. 932.701-932.704 if such lienholder
establishes that he neither knew, nor should have known after a
reasonable inquiry, that such property was being used or was
likely to be used in criminal activity; that such use was without
his consent, express or implied; and that the lien had been
perfected in the manner prescribed by law prior to such seizure.
If it appears to the satisfaction of the court that a
lienholder's interest satisfies the above requirements for
exemption, such lienholder's interest shall be preserved by the
court by ordering the lienholder's interest to be paid from such
proceeds of the sale as provided in s. 932.704(3)(a).
 932.704. Forfeiture proceedings. 
 (1) The state attorney within whose jurisdiction the contraband
article, vessel, motor vehicle, aircraft, other personal
property, or real property or interest in real property has been
seized because of its use or attempted use in violation of any
provisions of law dealing with contraband, or such attorney as
may be employed by the seizing agency, shall promptly proceed
against the contraband article, vessel, motor vehicle, aircraft,
other personal property, or real property or interest in real
property by rule to show cause in the circuit court within the
jurisdiction in which the seizure or the offense occurred and may
have such contraband article, vessel, motor vehicle, aircraft,
other personal property, or real property or interest in real
property forfeited to the use of, or to be sold by, the law
enforcement agency making the seizure, upon producing due proof
that the contraband article, vessel, motor vehicle, aircraft,
other personal property, or real property or interest in real
property was being used in violation of the provisions of this
act. The final order of forfeiture by the court shall perfect in
the law enforcement agency right, title, and interest in and to
such property and shall relate back to the date of seizure.
 (2) If the property is of a type for which title or
registration is required by law, or if the owner of the property
is known in fact to the seizing agency at the time of seizure, or
if the seized property is subject to a perfected security
interest in accordance with the Uniform Commercial Code, chapter
679, the state attorney, or such attorney as may be employed by
the seizing agency, shall give notice of the forfeiture
proceedings by registered mail, return receipt requested, to each
person having such security interest in the property and shall
publish, in accordance with chapter 50, notice of the forfeiture
proceeding once each week for 2 consecutive weeks in a newspaper
of general circulation, as defined in s. 165.031, in the county
where the seizure occurred. The notice shall be mailed and first
published at least 4 weeks prior to filing the rule to show cause
and shall describe the property; state the county, place, and
date of seizure; state the name of the law enforcement agency
holding the seized property; and state the name of the court in
which the proceeding will be filed and the anticipated date for
filing the rule to show cause. However, the seizing agency shall
be obligated only to make diligent search and inquiry as to the
owner of the subject property, and if, after such diligent search
and inquiry, the seizing agency is unable to ascertain such
owner, the above actual notice requirements by mail with respect
to perfected security interests shall not be applicable.
 (3)(a) Whenever the head of the law enforcement agency
effecting the forfeiture deems it necessary or expedient to sell
the property forfeited rather than to retain it for the use of
the law enforcement agency,
*971 or if the property is subject to a lien which has been preserved
by the court, he shall cause a notice of the sale to be made by
publication as provided by law and thereafter shall dispose of
the property at public auction to the highest bidder for cash
without appraisal. In lieu of the sale of the property, the
head of the law enforcement agency, whenever he deems it
necessary or expedient, may salvage the property or transfer
the property to any public or nonprofit organization, provided
such property is not subject to a lien preserved by the court
as provided in s. 932.703(3). The proceeds
of sale shall be applied: first, to payment of the balance due on
any lien preserved by the court in the forfeiture proceedings;
second, to payment of the cost incurred by the seizing agency in
connection with the storage, maintenance, security, and
forfeiture of such property; third, to payment of court costs
incurred in the forfeiture proceeding. The remaining proceeds
shall be deposited in a special law enforcement trust fund
established by the board of county commissioners or the governing
body of the municipality, and such proceeds and interest earned
therefrom shall be used for school resource officer, crime
prevention, or drug education programs or for other law
enforcement purposes. These funds may be expended only upon
request by the sheriff to the board of county commissioners or by
the chief of police to the governing body of the municipality,
accompanied by a written certification that the request complies
with the provisions of this subsection, and only upon
appropriation to the sheriff's office or police department by the
board of county commissioners or the governing body of the
municipality. Such requests for expenditures shall include a
statement describing anticipated recurring costs for the agency
for subsequent fiscal years. Such funds may be expended only to
defray the costs of protracted or complex investigations; to
provide additional technical equipment or expertise, which may
include automated fingerprint identification equipment and an
automated uniform offense report and arrest report system; to
provide matching funds to obtain federal grants; or for school
resource officer, crime prevention, or drug abuse education
programs or such other law enforcement purposes as the board of
county commissioners or governing body of the municipality deems
appropriate and shall not be a source of revenue to meet normal
operating needs of the law enforcement agency. In the event that
the seizing law enforcement agency is a state agency, all
remaining proceeds shall be deposited into the state General
Revenue Fund. However, in the event the seizing law enforcement
agency is the Department of Law Enforcement, the proceeds accrued
pursuant to the provisions of this chapter shall be deposited
into the Forfeiture and Investigative Support Trust Fund; if the
seizing law enforcement agency is the Department of Natural
Resources, the proceeds accrued pursuant to the provisions of
this chapter shall be deposited into the Motorboat Revolving
Trust Fund to be used for law enforcement purposes; and, if the
seizing law enforcement agency is a state attorney's office
acting within its judicial circuit, the proceeds accrued pursuant
to the provisions of this chapter shall be deposited into the
State Attorney's Forfeiture and Investigative Support Trust Fund
to be used for the investigation of crime and prosecution of
criminals within the judicial circuit.
 (b) If more than one law enforcement agency was substantially
involved in effecting the forfeiture, the court having
jurisdiction over the forfeiture proceeding shall equitably
distribute the property among the seizing agencies. Any forfeited
money or currency, or any proceeds remaining after the sale of
the property, shall be equitably distributed to the board of
county commissioners or the governing body of the municipality
having budgetary control over the seizing law enforcement
agencies for deposit into the law enforcement trust fund
established pursuant to paragraph (a). In the event that the
seizing law enforcement agency is a state agency, the court shall
direct that all forfeited money or currency and all proceeds be
forwarded to the Treasurer for deposit into the state General
Revenue Fund, unless the seizing agency is the Department of
Natural Resources, in
*972 which case the court shall direct that the proceeds be deposited
into the Motorboat Revolving Trust Fund to be used for law
enforcement purposes. If the seizing agency is a state
attorney's office acting within its judicial circuit, the
court shall direct that the proceeds be deposited into the State
Attorney's Forfeiture and Investigative Support Trust Fund. If
the Department of Natural Resources together with a state
attorney's office acting within its judicial circuit are
substantially involved in effecting the forfeiture, the court
having jurisdiction over the forfeiture proceeding shall
equitably distribute the proceeds to the Motorboat Revolving
Trust Fund and the State Attorney's Forfeiture and Investigative
Support Trust Fund within the judicial circuit.
 (4) Upon the sale of any vessel, motor vehicle, or aircraft,
the state shall issue a title certificate to the purchaser. Upon
the request of any law enforcement agency which elects to retain
titled property after forfeiture, the state shall issue a title
certificate for such property to the agency.
 (5) Any law enforcement agency receiving or expending forfeited
property, or proceeds from the sale of forfeited property in
accordance with this act, shall submit a quarterly report
documenting the receipts and expenditures, on forms promulgated
by the Department of Law Enforcement, to the entity which has
budgetary authority over such agency, which report shall specify,
for such period, the type, approximate value, and disposition of
the property received and the amount of any proceeds received or
expended. The entity which has budgetary authority over such
agency shall forward to the Department of Law Enforcement such
reports for collection. Neither the law enforcement agency nor
the entity having budgetary control shall anticipate future
forfeitures or proceeds therefrom in the adoption and approval of
the budget for the law enforcement agency.

NOTES
[1] We have jurisdiction pursuant to article V, section 3(b)(5) of the Florida Constitution.
[2] Although the Act required the state to file a petition for a rule to show cause, see section 932.704(1) of the Florida Statutes (1989), the Act did not expressly require the state to seek a seizure warrant or to file a notice of lis pendens.
[3] In re Real Property Forfeiture Proceedings, Nos. 90-250-CA; 90-251-CA; 90-252-CA; 90-253-CA; 90-383-CA (Fla. 8th Cir.Ct. Dec. 21, 1990).
[4] In Griffis v. State, 356 So.2d 297 (Fla. 1978), receded from, Duckham v. State, 478 So.2d 347 (Fla. 1985), the Court expressly declined to rule on the facial constitutionality of the Florida Uniform Contraband Transportation Act, sections 943.41-.44 of the Florida Statutes (1975), the predecessor statutes to those in issue here. We also note that in In re Forfeiture of 1976 Kenworth Tractor Trailer Truck, 576 So.2d 261 (Fla. 1990), we did not address the constitutionality of the forfeiture process itself when we held that the Florida Constitution required damages be paid to a party whose truck was confiscated in an unsuccessful forfeiture action where the state failed to comply with a court order to return the property for two years.
[5] This is not intended to be a complete catalog of substantive due process. Rather, our discussion merely focuses on substantive due process as relevant to the issue at hand.
[6] The Act, as amended in 1989, is published in the appendix to this opinion.
[7] rights and interest in and title to contraband articles or contraband property used in violation of s. 932.702 shall immediately vest in the state upon seizure by a law enforcement agency, subject only to perfection of title, rights, and interests in accordance with this act.
§ 932.703(1), Fla. Stat. (1989) (emphasis supplied).
[8] We do not discuss the constitutionality or application of the provision authorizing forfeiture of substitute property because neither the facts in this case nor the arguments presented specifically raise this issue.
[9] Article II, section 3 of the Florida Constitution provides:

SECTION 3. Branches of government.  The powers of the state government shall be divided into legislative, executive and judicial branches. No person belonging to one branch shall exercise any powers appertaining to either of the other branches unless expressly provided herein.
[10] Our decision does not address the portions of the Act dealing with the disposition of property once a court has decided to enter a final order of forfeiture.
[11] See supra note 7.
[12] Although we cite to some federal decisions, we explicitly decide this case on state constitutional grounds.
[13] In United States v. Single Family Residence & Real Property Located at 900 Rio Vista Blvd., 803 F.2d 625, 632 (11th Cir.1986) (Rio Vista), the court found that no preseizure notice or hearing was required for the seizure of a residence and real property, relying on Calero-Toledo v. Pearson Yacht Leasing Co., 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974), which held that no preseizure notice or hearing was required to seize a yacht. The court in Rio Vista, however, failed to expressly consider the different interests implicated when real or residential property is seized, a critical distinction drawn by various federal courts in subsequent opinions. See United States v. Monsanto, 924 F.2d 1186 (2d Cir.1991) (en banc); United States v. Premises & Real Property at 4492 South Livonia Rd., 889 F.2d 1258 (2d Cir.1989); United States v. Leasehold Interest in Property Located at 850 S. Maple, 743 F. Supp. 505 (E.D.Mich. 1990); United States v. Parcel I, Beginning at a Stake, 731 F. Supp. 1348 (S.D.Ill. 1990).
[14] Since article I, section 12 of the Florida Constitution expressly requires conformity with the fourth amendment of the United States Constitution, the warrant requirement of article I, section 12 also applies to seizures in forfeiture actions under Florida law.
[15] The parties argue that the manner in which due process applies to forfeiture is controlled by whether the forfeiture is "criminal," "quasi-criminal," or "civil." We reject the overly simplistic notion that a label should be dispositive in deciding constitutional cases. Disputes over rights guaranteed by the Florida Constitution must be decided by evaluating and, if necessary, balancing the interests as appropriate under the circumstances.
[16] In Lamar v. Universal Supply Co., Inc., 479 So.2d 109 (Fla. 1985), the Court said that the seizure of property prior to notice and hearing under the 1983 version of the Florida Contraband Forfeiture Act was not a violation of due process. The 1983 version of the Act, however, addressed only the seizure and forfeiture of personal property, and did not address the seizure and forfeiture of real property, which was added to the Act by chapter 89-148, Laws of Florida. Compare §§ 932.701-.704, Fla. Stat. (1983) with §§ 932.701-.704, Fla. Stat. (1989). Our decision today is largely consistent with that discussion in Lamar because we again approve the seizure of personal property prior to notice and opportunity for a hearing. We reaffirm the holding in Lamar that due process requires reasonably prompt proceedings in forfeiture actions. To the extent that Lamar can be read to be inconsistent with today's decision, we recede therefrom.
[17] See § 48.23, Fla. Stat. (1989).