ZEHMER, Judge.
We review by appeal an amended final judgment ordering the forfeiture of a 1985 Mercedes automobile and $23,316.00 in United States currency. Because the trial court utilized an incorrect standard of proof in determining this case, we reverse and remand for a new hearing.
This proceeding was initiated through a complaint for forfeiture filed by the state attorney on behalf of Jacksonville Sheriff’s Office. Responding to the complaint were Patricia 0. Reese and Glenn Schofield. The trial court based the final judgment granting forfeiture on a stipulated statement of facts filed on behalf of Glenn Schofield. The stipulated statement of facts states as follows:
1) On March 21,1990 a search warrant was executed on 203 Elm Street by members of the Jacksonville Sheriff’s Office. The search warrant was based on probable cause from a previously reliable informant. Patricia Reese was at the scene and the Defendant, Glenn Scho-field was not at the scene at that time. The police later learned that Glen [sic] Schofield was several apartments away. When they went to that apartment no one was there. They returned to 203 Elm Street where the search warrant was executed and saw Glenn Schofield running out of the back of the apartment. He was stopped at gun point, read his Miranda Rights, hand cuffed. The Police said that he told them the guns were his but the dope was not real. He did not discuss in detail where he got the guns or where they were in the house. At the criminal trial Glenn Scho-field denied saying this. Detective Rick Graham testified that he executed the warrant with Detective Center and found what appeared to be pounds of crack cocaine, guns, and money inside the residence during day light hours. At first, marijuana was found in the living room where the police say Patricia Reese threw down when the Detectives first came into the residence. A crack like substance was found in the kitchen with a plate and razor blade and chopped up portions of what appeared to be crack cocaine. Also, what appeared to be crack cocaine was found in the master bedroom in garbage bags with plastic packages. This later turned out to be a wax-like substance known as lidocaine. Fingerprints were processed but none to the knowledge of the Detectives belonged to Glenn Schofield. Money was found in closets and in one of the bedrooms in a black purse type bag. The rest of the money was found in the dresser drawer with denominations of $50’s and $100’s with approximately 18 or 19 packages. The number and denomination of bills were 600 $20 bills, 154 $10 bills, 24 $5 bills, 88 $50 bills and 32 $100 bills. The money was folded in half and secured with various colored rubber bands in $1,000 increments. All the detective[s] said that all of the currency *1263 was packaged in a manner distinctive to narcotic trafficing [sic]. A triple beam set of scales was also found in the bedroom. Additionally, powdered cocaine was found in the number two bedroom between the mattress in tin foil. The other substance was later determined to be a counterfeit substance containing li-docaine, which the detectives said they knew was commonly sold as crack cocaine. The street name for the substance is “wabalock.” A large amount of the substance was packaged as shown in the attached photographs and packaged for what appeared to be for resale according to the detectives.
2) The Police said that Patricia Reese stated to the police that she knew nothing about the stuff and that all the guns, money and drugs belonged to Glenn Schofield. Patricia Reese stated she told the Police only that, “The stuff was Glenn’s.”
3) Patricia Reese stated everything in the bedroom belonged to Glenn Schofield according to the detectives. Patricia Reese states that the currency was saved and given to her by her family.
4) A Mercedes was found close to the scene of the search warrant. The driver of the Mercedes fled the scene and was stopped at McCoys Creek and 1-95. Teresa Maze of 909 Madison Street was driving the Mercedes and was stopped for a traffic infraction. The Mercedes was seized. No drugs or money was seized in the Mercedes. The Police said Glenn Schofield stated, “That’s my car but I put it in my brother’s name, Cisero Schofield.” The detectives asked why he did not put it in his own name and the detectives stated Glenn Schofield stated, “you know I ain’t gonna put it in my name.” Glenn Schofield denied saying this. On March 22, 1990 Detective Center received a call from Cisero Schofield, Jr. who stated that he owned the car and that he wanted the ear back. The Police then said Cisero Schofield, Jr. stated that Cisero Schofield, Sr. owned the car. Cisero Schofield, Sr. stated that he had bought the car yesterday for $14,000 cash. The Police said they heard Cisero Schofield, Jr. yelling in the back ground, “Say $9,000 for taxes.” The Police then said Cisero Schofield, Sr. stated that he had paid $9,000 for the car. Cisero Scho-field, Sr. further stated that he did not work and had not worked for three years. Cisero Schofield, Sr. stated that he had bought the car for his son, Cisero Schofield, Jr. The Police said that Cisero Schofield, Jr. did not work. However, Cisero Schofield said that he worked for the “Tire Picker Company.” (See attached business card).
5)Glenn Schofield’s brother, Cisero Schofield, Jr., bought the Mercedes a few hours before Glenn Schofield’s arrest. The Mercedes was parked several driveways away from the scene of the arrest. It was driven away at the time of the arrest by Teresa Maze of 901 Madison Street, Jacksonville, Florida and she was stopped for a traffic infraction. The attached Exhibit “A” is the Bill of Sale which shows that Cisero Schofield purchased the Mercedes for $9,914.75 as well as the title information [sic].
In addition to the stipulated statement of facts, the record before the trial court included photographs of evidence seized at the crime scene, copies of what appear to be a bill of sale and title information on the Mercedes automobile, and a business card for “The Tire Picker Company” on which the name “Cisero Schofield” is handwritten. Based on the stipulation and exhibits, the trial court entered final judgment ordering forfeiture of the automobile and the currency. The court ruled that the state had the initial burden of showing probable cause to believe that the automobile and currency were subject to forfeiture and that upon the state’s demonstration of probable cause, the burden shifted to the claimants to rebut the probable cause or establish by a preponderance of the evidence that the forfeiture statute was not violated. With regard to the currency, the *1264 court concluded that “[t]he evidence stipulated by the parties is clearly sufficient to establish probable cause to believe that the $23,316.00 United States currency is subject to forfeiture.” The court stated that it found significant the facts that the currency was packaged in $1,000 folds secured with various colored rubber bands, that Patricia Reese initially disclaimed ownership of the currency, and that firearms, counterfeit controlled substances, controlled substances, and paraphernalia were found within the premises in which the currency was found. With regard to the automobile, the court concluded that
the evidence as a whole requires forfeiture of the Mercedes as well. The Court finds significant the Claimant Schofield’s flight from the premises, his conflicting statements with regard to ownership of the car, the conflicting statements of Cisero Schofield, Jr. and Cisero Schofield, Sr. regarding ownership and the cash purchase price of the car, and the lack of legitimate employment of any of the foregoing individuals, as well as the other factors set forth above.
Finally, the court concluded that “the evidence presented does not establish by a preponderance of the evidence that the forfeiture statute was not violated,” and ordered forfeiture of the currency and the automobile.
After the judgment in this case was entered, the supreme court rendered its decision in Department of Law Enforcement v. Real Property, 588 So.2d 957 (Fla.1991). Reviewing the Florida Contraband Forfeiture Act, sections 932.701-704, Florida Statutes (1989), the supreme court clarified the procedure that must be followed during litigation of forfeiture actions to comport with constitutional requirements.[1] The supreme court stated that in noncriminal contexts, it had previously held that constitutionally-protected individual rights may not be impinged with a showing of less than clear and convincing evidence, and thus determined that to be the appropriate standard in forfeiture cases. The court held:
Accordingly, “due proof” under the Act constitutionally means that the government may not take an individual’s property in forfeiture proceedings unless it proves, by no less than clear and convincing evidence, that the property being forfeited was used in the commission of a crime.
588 So.2d at 968.
Although Department of Law Enforcement was decided after the judgment in this case was entered, this court is required to apply the law in effect at the time of its decision. Cantor v. Davis, 489 So.2d 18 (Fla.1986); Florida Patient’s Compensation Fund v. Von Stetina, 474 So.2d 783 (Fla.1985); Hendeles v. Sanford Auto Auction, Inc., 364 So.2d 467 (Fla.1978); Florida East Coast Railway v. Rouse, 194 So.2d 260 (Fla.1966); Junco v. State, 510 So.2d 909 (Fla. 3d DCA 1987). Because the trial court did not apply the correct standard of proof as enunciated in Department of Law Enforcement, we reverse and remand for a new forfeiture hearing.
On remand, the trial court may not base a judgment of forfeiture of the currency to which Patricia Reese claims entitlement on the stipulated statement of facts contained in this record. Contrary to the trial court’s characterization of the stipulated statement of facts as “evidence stipulated by the parties,” only Glenn Schofield, not Patricia Reese, stipulated to the facts contained in that statement. Thus, the statement cannot be considered as evidence to which Patricia Reese also stipulated.
In closing, we find it necessary to comment on the considerable difficulty encountered in identifying the appellants] in this case due to conflicting statements through *1265 out the appellate record.[2] Despite this difficulty, we would accept without comment the clarification made at oral argument that Patricia Reese and Cisero Schofield are the appellants but for the fact that the appealed judgment reflects that Glenn Schofield and Patricia Reese are the two persons claiming an interest in the subject property; it does not reflect that Cisero Schofield claimed any such interest. The record on appeal reflects that an order for rule to show cause why forfeiture should not be entered was served on Glenn Scho-field and Cisero Schofield, but it does not contain a response to that order or any document of any kind filed by Cisero Scho-field. Thus, we remain unable to ascertain from the record whether Cisero Schofield even has standing to challenge the judgment on appeal.[3] Because the state did not question these inconsistencies or otherwise raise any issue of standing, and because the judgment must be reversed as a matter of law based on matters appearing on the face of the judgment, we do not determine precisely who is a proper party to this case. However, the trial court should, on remand, include in its judgment an express determination of the persons who are properly before the court claiming an interest in the subject property.
REVERSED AND REMANDED.
MINER and WEBSTER, JJ., concur.

. That opinion also clarifies the procedures that must be followed during the initial seizure of the property.

. The notice of appeal lists "Glenn Schofield, Patricia Reese and Cisero Schofield” as the "appellants.” The initial brief contains no identification of the appellants] by name and uses only the singular adjective "appellant," and the reply brief contains a preliminary statement identifying the appellant as Glenn Schofield only. In response to our inquiry at oral argument, attorney Jefferson Morrow identified Cisero Scho-field and Patricia Reese as the appellants. In a supplemental brief filed after oral argument, Mr. Morrow again used the term "appellant” in the singular to identify his clients, but stated that the term “appellant" refers to both "Patricia Reese Owens and Cicero Schofield.”

. At oral argument, the attorney for the state represented she assumed that Glenn Schofield was the only appellant.