LEHAN, Acting Chief Judge.
Appellant challenges the forfeiture of his pickup truck by appellee, raising five points on appeal. We affirm.
Appellant first argues that his due process rights were violated because appellee failed to give him immediate notice of his right to request an adversary hearing upon the seizure of his truck, as required by Dep’t of Law Enforcement v. Real Property, 588 So.2d 957, 965 (Fla.1991) (hereafter DLE). It is true that appellee’s petition for rule to show cause, filed on October 2, 1991, failed to give such notice. At that point, appellant’s truck had already been in appellee’s possession for over three months, since July 11, 1991. It is also true that the petition was filed after the release of DLE, which was on August 15, 1991. Thus, while the seizure of the truck occurred before the release of DLE, the procedural safeguards that case spelled out were otherwise applicable to this case. See Philip J. Padovano, Florida Appellate Practice § 14.7 [p. 237] (1988) (“The effective date of an appellate decision is the date appearing on the face of the decision, even though most decisions do not become final until after the time has expired for filing a motion for rehearing.”).[1]
Nonetheless, we conclude that appellant has waived his due process argument. Nothing in the record, including his motion to dismiss the rule to show cause, indicates that he timely made a due process challenge under DLE.. He made that challenge for the first time in his memorandum supporting his motion for rehearing, after the trial court had already entered the final judgment of forfeiture. A trial court’s refusal to consider matters presented for the first time in a motion for rehearing is generally not an abuse of discretion. See James A. Cummings, Inc. v. Larson, 588 So.2d 1066, 1068 (Fla. 4th DCA 1991). Cf. Savoie v. State, 422 So.2d 308 (Fla.1982) (trial court is under no obligation to consider a motion to suppress made for the first time during a trial).
State Dep’t of Natural Resources v. Ryan, 617 So.2d 773 (Fla. 3d DCA 1993), though it involves a slightly different fact pattern, also supports an affirmance as to the due process argument. Ryan ruled that DNR was not required to send out a supplemental notice advising claimant of his right to a postseizure hearing under DLE when a notice of seizure not mentioning that right had been sent shortly before the release of DLE. Ryan noted that after DLE was issued, claimant’s counsel “did not request a postseizure hearing” and concluded that any error was harmless:
Claimant’s right to a hearing arose directly under the Florida Constitution as construed in DLE v. Real Property. Claimant’s right to a hearing was in no way dependent on DNR’s sending him notice.
Boiled down, claimant complains that DNR failed to advise him of a right he already knew he had.
Id. at 775. Similarly, appellant is arguing that appellee “failed to advise him of a right he already knew [or should have known] he had.”
Appellant’s second argument is that seizure of his truck was too drastic an action prior to forfeiture, and that DLE required less restrictive means which were available, such as a bond. However, appellant failed to make a timely argument in this regard in the trial court.
Appellant’s third argument is that the seizure of his truck was improper without a warrant, his consent, or exigent circumstances. However, nothing in DLE or the forfeiture statute requires a warrant, consent or exigent circumstances.
Appellant’s fourth argument is that he was denied his right to a jury trial, contending that since he was never notified of his right to a jury trial, he did not *339 knowingly or voluntarily waive such a right. DLE does call for a jury trial unless waived. 588 So.2d at 967. Again, however, appellant failed to avail himself of DLE in a timely manner below. In any event, DLE provides that the Florida Rules of Civil Procedure are generally to be applied. Id. Rule 1.430(d) provides: “A party who fails to serve a demand as required by this rule waives trial by jury.” Appellant in this ease did not serve such a demand.
Appellant’s last argument is that the trial court erred for several evidentiary reasons. In this regard we address only his contention that the evidence was legally insufficient to support forfeiture of his truck.
Specifically, appellant contends that the evidence was insufficient because the criminal activity in this case was not dependent upon use of his truck. We do not agree. At the onset, two arguments he makes about the evidence can be refuted. First, he points out that while the trial court found that at least two illegal sexual acts involving minor females occurred, it also found that neither act took place on or near the truck. However, those findings do not mean that use of the truck was not essential, as opposed to only incidental, to the commission of the offenses. Second, noting that the court found “that the vehicle was used to facilitate the act because it was used to transport the ‘victims’ to the locations where the acts occurred,” he argues that forfeiture was improper because minor females are not “contraband.” However, the fact remains that transporting contraband is but one way to trigger the forfeiture statute. Another way is to use a vehicle “as an instrumentality in the commission of ... any felony.” § 932.-701(2)(e), Fla.Stat. (1991).
The remaining question in this case then becomes whether appellant’s truck was an instrumentality under section 932.701(2)(e). The stipulated facts indicate that appellant and a male passenger in his truck picked up two minor females who had solicited a ride from them at a convenience store. At this point there is no indication of any intent by appellant to indulge in sexual activity with the girls. Appellant took the girls to a high school, where the girls “indicated they were to meet some friends. At that point, one of the minor female[s] engaged in oral sex with one or both of the suspects.” This criminal episode will be referred to as “the first incident.”
After eating at a McDonald’s restaurant, the men then looked into the possibility of booking a motel room with the minor females, but one place was “too expensive” and another was closed for the night. Appellant, after dropping off his male companion, took the girls to a riding stable where he both lived and worked. The following morning, one of the girls performed fellatio on appellant. During their two-night stay at the stables, the girls went on to perform fellatio on “other ranch hands living on the premises” before they departed. The sexual activity at the stables involving appellant will be referred to as “the second incident.”
As for the first incident, it appears that the use of the truck was only incidental. At the time appellant picked the girls up at the convenience store, there is no indication he had any intent or design to engage in sexual activity with them. In City of Edgewood v. Williams, 556 So.2d 1390 (Fla.1990), the owner of a BMW received a call at his office from a young girl he knew. She needed a ride from her brother’s apartment because of rain. He drove his BMW one block from his office to the apartment. Before leaving there with the girl, he fondled her breast. Williams held there could be no forfeiture because
the use of the vehicle was not closely related to the commission of a criminal act. At best, use of the car was only remotely incidental to the act. There is no evidence to suggest that Williams had any intention to commit a criminal act when he used his car in this instance.
If this case involved only the first incident, we would reverse under Williams.
However, we conclude the second incident presents a different story. It can be readily inferred that appellant, after the first incident and at the time he drove the *340 minors from motel to motel in his truck before taking them to where he lived, had formed the intent to participate in further sexual activity with them.
Smith v. Caggiano, 496 So.2d 853 (Fla. 2d DCA 1986) and Duckham v. State, 478 So.2d 347 (Fla.1985) both appear to be on point. In Smith, an automobile was subject to forfeiture because it had been used to transport its owner to the scene of felonious wagering. -And in Duckham, an automobile was also subject to forfeiture. Defendant in that case agreed to meet with an undercover officer to purchase drugs and drove his car to a restaurant where the two could then negotiate the deal. The common thread that the second incident herein, Smith, and Duckham all share is that the respective defendants, before using their vehicles, had already formed the intent to commit their crimes and then used their vehicles to carry out that intent.
Affirmed.
PARKER and ALTENBERND, JJ, concur.

. Appellee argues to the contrary, contending that DLE did not become law until rehearing was voluntarily dismissed on December 2, 1991. However, its case, Zimbrick v. Zimbrick, 453 So.2d 1155 (Fla. 4th DCA 1984) (en banc), concerned not the effect of an appellate opinion but that of a trial court's order in the context of a premature motion for rehearing.