508 So.2d 747 (1987)
Anthony FITZGERALD, Appellant,
v.
METRO DADE COUNTY and the Metro Dade Police Department, Appellees.
No. 86-493.
District Court of Appeal of Florida, Third District.
June 2, 1987.
Rehearing Denied July 8, 1987.
*748 Leon Rolle, Miami, for appellant.
Thomas Guilfoyle, Miami, for appellees.
Before BARKDULL, HENDRY and NESBITT, JJ.
BARKDULL, Judge.
This is an appeal from a final order requiring the appellant to forfeit his interest in $31,015.00 pursuant to the provisions of section 932.704(1), Florida Statutes (1985).
On July 24, 1984, Sergeant Press of the Metro-Dade Police Department was investigating a vehicle which had its door open at the east side of the Skyways Hotel. As he was running a records check on the vehicle, appellant Anthony Fitzgerald pulled up in a Cadillac just east of the detective and exited the vehicle carrying a green canvas type bag. As he walked toward the detective who was observing him, he became nervous and increased his pace. As he passed, Sergeant Press noticed two bulges on the side of his hip. Sergeant Press identified himself as an officer but Fitzgerald continued walking at an increased pace. The detective then yelled "Halt, Police" and Fitzgerald, approximately 25 yards away, bolted and ran into the Skyways Hotel. Sergeant Press and another detective chased and caught Fitzgerald in the lounge area. As he was running he threw down a 9-millimeter weapon that he had withdrawn from his hip area. The officers took the green bag, placed handcuffs on him and placed him under arrest for carrying a concealed firearm and resisting arrest without violence. The green bag contained $31,015.00 in U.S. currency, wrapped with rubberbands in individual stacks. Also in the bag were personal items and a one way airplane ticket to New York in the name of Simmon. Fitzgerald was read his Miranda Rights and then stated that the money was not his, but that it belonged to a person named Denzel Samuels. He stated that he did not know the amount of the currency and that he had received a phone call instructing him to go to the Skyways Hotel with the money, where he was to meet a Mr. Samuels. The officers subsequently went into the lounge where Fitzgerald was to meet Samuels but there was no one by that name registered at the hotel and Fitzgerald stated "he's not here." Fitzgerald was transported to the jail where a hold was placed on him since he was an illegal alien from Jamaica.
The officers then took the currency, weapon and other articles to the property room where the currency was counted, placed into a heat-sealed airtight bag, sealed with evidence tape and placed into a vault. Sergeant Press testified that currency is kept on the second floor while bales of marijuana are kept on the first. *749 On August 9, 1984, Sergeant Press returned to the property room and transported the currency to a U.S. Customs trailer and met with Customs Officer Godsey, a canine (K-9) handler. They then proceeded to an airline cargo area where the detective hid the money while the Customs Officer and his canine were out of the area. The officer removed boxes from a pallet, cut open the money bag and placed the money between the boxes and then put the boxes back to cover the money. Sergeant Press removed the bag and moved 50-60 feet away. When the heat-sealed bag was cut open it was in the same condition as when it had been sealed. When the Customs Officer came in, his canine pushed the boxes away and tried to bite and eat the currency, thus alerting on the money. After the alert, Officer Godsey investigated the area further and found no narcotics. The dog did not alert anywhere else in the warehouse.
Sergeant Press testified as to the aforementioned facts including the dog test. He stated that the money was counted and heat-sealed in an airtight plastic bag before storing in the police property room and it remained sealed until the money was retrieved from the property room and later opened at the test site. He further testified that the money itself was never exposed to the narcotic laden atmosphere of the property room. Eugene Godsey, the dog handler, testified as to how the test was performed and the results of the dog test.
Appellant was called as a witness by appellee. He testified that the $31,015.00 was his life savings acquired through working and gambling, with about one-third being derived from gambling. Appellant's home address is 1007 Winthrop Street, Brooklyn, New York. He testified he kept the $31,015.00, his life savings, in his bedroom. He further testified that neither he, his wife nor roommate ever used drugs, and that the $31,015.00 was never involved with drugs. He stated that he brought the $31,015.00 from New York to Miami the day before the seizure. He also testified that he brought part of his life savings to Miami to give to his cousin, who was in Miami, to take to Jamaica. However, his cousin, Winston Wilson, lives in the same building in New York where appellant lives. Appellant stated that he lied when he originally told the police the $31,015.00 belonged to a Denzel Samuels.
Appellee then proffered Sergeant Fred Silber of the Metro-Dade Police Department as an expert witness in undercover drug and money transactions. Sergeant Silber reviewed the police reports, depositions, and heard the testimony of the witnesses. He testified that in almost every case in which he had been involved, the currency was bound in bundles with rubber bands. This is done so that parties in the drug deal can count the money quickly. He stated that during an arrest and seizure, the person with the money generally disclaims ownership of the currency. He went on to state that in July, 1984, the wholesale price of a kilogram of cocaine was $25,000.00-$28,000.00, and that thirtyone thousand Dollars ($31,000.00) was the going price of one kilogram. Silber then formed the opinion that the $31,015.00 had been used in a narcotics transaction. This opinion was based on six factors: the drug dog alert, the firearm, the packaging of the currency, Fitzgerald's fleeing the police, the airline ticket in another name, and Fitzgerald's statements concerning the money. When asked by Judge Rivkind, Sergeant Silber testified that he believed the narcotics transaction had already occurred, not that the money was going to be used to buy a kilo in the future. Sergeant Silber testified that $31,000.00 would buy a felony amount, and a trafficking amount, of a controlled substance.
Based on the foregoing, the trial court concluded that the money was used for an unlawful purpose  the drug business. It thereby entered the judgment of forfeiture finding a nexus between the cash and a chapter 893 narcotics violation of which the appellant was aware.
We agree with the trial court and affirm the order of forfeiture appealed herein under the rationale of Lobo v. Metro-Dade *750 County Police Dept., 505 So.2d 621 (Fla. 3d DCA 1987), and cases cited therein.
The totality of the facts presented by the state, to wit: the firearm in the appellant's possession, the appellant's fleeing the police, the airline ticket in another name, the appellant's statements made at time of the arrest concerning the money, the packaging of the currency, and the drug dog alert, are clearly sufficient to meet the state's burden of establishing probable cause for forfeiture in this case. The appellant's uncorroborated and self-serving testimony that the money was his life savings he brought to Miami to give to his cousin was properly rejected by the trial court as failing to rebut the state's showing of probable cause.
We also find any claim by the appellant that the drug dog test was tainted is without merit. The undisputed facts clearly show that the money in the instant case was sealed in an airtight heat-sealed bag outside the drug-polluted atmosphere of the police property room and that the money itself was never subjected to the property room atmosphere.
Therefore, the final judgment of forfeiture appealed herein is hereby affirmed.
Affirmed.