CAWTHON, Senior Judge.
Marco Barnes appeals from a conviction for attempted first degree murder with a firearm.[1] He contends that the trial court committed fundamental error when it admitted into evidence an attachment to a search warrant for appellant’s car, which contains a statement from his stepfather of an allegedly prejudicial admission he made to his mother. Appellant also contends that the trial court abused its discretion in allowing the prosecutor to impeach a state witness with statements from her pretrial deposition. Based on our finding that admitting the above attachment was fundamental error, we reverse and remand for a new trial.
In July 1981, Barnes was charged with armed kidnapping, attempted first degree murder with a firearm and possession of a firearm by a convicted felon. He eluded capture until 1987.
At trial, the state sought to prove, primarily through the testimony of appellant’s *989 girlfriend, Louise Armstrong, that Barnes was angry at his girlfriend and jealous of the attention she received from other men. He drove her to Hurlbert Field in Fort Walton Beach and once there shot her at least four times.
During the state’s case-in-chief, the state introduced, without objection, the officer’s. affidavit of probable cause, Attachment “A”, which in pertinent part, includes the following statements:
“On July 18, 1981, at approximately 4:00 p.m., Marco Barnes accompanied by Louise Armstrong (the victim) parked the described vehicle in the vicinity of the Hurlbert Field Picnic area (Okaloosa County). According to the victim, Barnes shot her two times while she was within the vehicle, then removed her from the vehicle and shot her two more times. Barnes then placed the victim back in the vehicle and drove her to his mother’s residence in Pensacola, Florida. Your affiant [the officer] was also present during the interview of Marco Barnes’ stepfather, Henderson Williams, who stated as follows:
Marco Barnes told his mother that he had shot the victim in Ft. Walton Beach. Mr. Williams then drove the victim to the hospital in Barnes’ vehicle and left it in the custody of the Escambia County Sheriff’s Department ...”
The defense theory of the case was that Barnes had participated in a drug transaction at Hurlbert Field which went awry. Barnes asserted that Ms. Armstrong, a cocaine abuser, had stolen his life savings and admitted to taking the money. To compensate for the lost savings, she devised a scheme to “rip off” certain drug dealers at Hurlbert field. He followed her plan to first sell cocaine to some drug dealers and then forcibly recoup the money and the drugs. Instead, one of the drug dealers in the confrontation- that ensued shot his girlfriend. Barnes managed to get away, taking his girlfriend to his mother’s home and then to the hospital for medical treatment. He disappeared for fear of retaliation. No physical evidence was found from which this account or the state’s theory could be corroborated.
After the jury began its deliberations, the jury asked the court whether Attachment “A”, was “a sworn-to statement by that officer.” Defense counsel now objected that Attachment “A” was inadmissible because it contained the unsworn hearsay statements attributed to Barnes’ stepfather, who was apparently unavailable to testify.
The state responded that even though Attachment “A” contained hearsay, it was already in evidence and under oath. The court then instructed the jury as follows:
Gentlemen of the Jury, in answer to your question, the statement attached to the search warrant which has been admitted into evidence, the statement referenced as Attachment “A”, was a statement made under oath by the law enforcement officer before a judge in Pensacola, Florida, in order to establish probable cause for the search warrant. The Court will advise you that because the requirements of a probable cause finding are less restrictive then the evidentiary requirements in a trial, that there might be some information contained in that statement that might not be admissible in a trial in the nature of hearsay testimony; however, the statement is in evidence, it was sworn to by the police officer before a magistrate, and it may be considered by you as evidence in this case.
In reviewing appellant’s contention that fundamental error took place in the circumstances of this case, we are compelled to agree. The trial court’s admission of Attachment “A” into evidence, despite the appellant’s lack of contemporaneous objection, goes to the very heart of the fairness of the trial here. It is well established that the fundamental error doctrine is to be applied only in those rare instances where the error is so substantial that it goes to the foundation of the case. See Ray v. State, 403 So.2d 956 (Fla.1981). Here, no physical evidence was brought forth linking the appellant to the crime. The question of who committed the crime heavily depended upon an evaluation of the credibility of several witnesses — particularly the victim and the appellant. When the jury interrupted its deliberations here to query *990 the judge on what weight to attach to Attachment “A,” the trial court instructed, with some qualification, that the jury could consider the police officer’s sworn statement to the judge which consists, in pertinent part, of the stepfather’s statement that the appellant told his mother he shot the victim.
A search warrant, with any attachments thereof such as an affadavit of probable cause, requires a judicial finding that evidence of crime will be found in a location or a crime has been committed. By admitting the search warrant and the subject attachment into evidence, the trial court permitted the placement before the jury of a judicial determination that either a crime had been committed or that evidence of its commission would be found, thereby removing this issue from the province of the jury. Once admitted, the trial court’s jury instructions on Attachment “A” merely qualified the degree of probative value of the police officer’s sworn statement to the judge containing the underlying prejudicial evidence that the police officer witnessed the stepfather’s statement that the appellant told his mother he shot the victim. Wholly admitting these multiple hearsay statements, which do not fall within any recognized exception and are highly prejudicial, constitutes fundamental error which deprived the appellant of his right to a fair trial, particularly in view of the unique factual circumstances in the record of this case. In finding fundamental error here, we emphasize that the court’s application of the doctrine is narrowly restricted to the court’s examination of the detailed record in this cause.
On the second issue, whether the trial court abused its discretion in allowing the prosecutor to impeach a state witness, we find that appellant’s contention is without merit and affirm.
Accordingly, the trial court’s conviction is reversed and remanded for a new trial.
SHIVERS and WOLF, JJ., concur.

. Case no. 90-469, where the appellant seeks a writ of habeas corpus on a belated appeal, and case no. 90-2423, wherein appellant directly challenges his conviction, were consolidated for all purposes by this court’s September 17, 1990 order.