593 So.2d 266 (1992)
Andrew FLETCHER, Clara Mills and Donna Collington, Appellants.
v.
METRO DADE POLICE DEPARTMENT LAW ENFORCEMENT TRUST FUND, and Asheville Buncombe Metropolitan Enforcement Group, Appellees.
No. 90-2271.
District Court of Appeal of Florida, Third District.
January 14, 1992.
Rehearing Denied February 25, 1992.
Richard Hersch, Miami, for appellants.
Arthur F. Nehrbass, Miami, for appellees.
Before SCHWARTZ, C.J., and BARKDULL and GERSTEN, JJ.
BARKDULL, Judge.
This is an appeal from a final judgment. A reasonable inference from the facts discloses the following:
On June 14, 1989, claimant/appellant Donna Collington arrived at Miami International Airport carrying $80,000 cash in a shoe box within her carry-on-bag. Metro Dade police officers were alerted by DEA[1] in Atlanta of appellant's arrival in Miami and met her at the airport.
After the appellant presented the officers with valid identification and her airline ticket, she consented to a police search of her carry-on-bag. During the search the officers found $80,000 in cash separated into $5,000 and $10,000 stacks by rubber bands. The appellant was asked whether she was travelling for business or pleasure to which she originally replied for pleasure. When the appellant was asked whether the money belonged to her; she replied that it did. Later, the appellant told the officers the money belonged to C & A Recreation, owned by her boyfriend, claimant/appellant, Andrew Fletcher. She further stated she was travelling on business.
After finding the currency, the officers seized it and removed it to another area for a dog sniff. A drug detection dog sniff alerted the officers to traces of narcotics found on the currency. The currency was thereupon seized for forfeiture.
At the forfeiture hearing, the appellants testified the money was to be used solely for legal purposes, namely the purchase of *267 video games for C & A Recreation, a social club in North Carolina. Claimant/appellant, Clara Mills, appellant, Andrew Fletcher's mother, testified she had given her son $25,000 of the $80,000 for the purchase of lighting equipment to be used in her nightclub and disco, also located in North Carolina.
Fletcher's money came from a business that was involved in narcotics transactions, as evidenced by the fact that Fletcher's business premises in North Carolina was searched prior to the seizure of the money herein, that search, with a warrant, produced 16 individual bags of marijuana and 79.5 grams of cocaine, and Fletcher's money can easily be connected to a criminal activity. On the other hand, there is nothing in the record to show that Mill's money came from anywhere other than a legitimate enterprise. There is nothing to connect her money to any criminal activity.
Subsequent to oral argument in this cause, the Supreme Court of Florida rendered its decision in Department of Law Enforcement v. Real Property, 588 So.2d 957 (Fla. 1991), 16 F.L.W. S497, holding that before a forfeiture could take place, the evidence must be "clear and convincing", that the property (which in this case was cash of $80,000.00) was being used in furtherance of a criminal enterprise.
We thereupon asked the parties to submit additional briefs as to the impact of the recent pronouncement of the Supreme Court of Florida in Department of Law Enforcement v. Real Property, supra, on these proceedings, recognizing that appeals are decided on the law as it existed at the time of the rendition of an appellate decision, and not as the law may have existed at the time of the trial court proceeding. Lowe v. Price, 437 So.2d 142 (Fla. 1983); Evans Packing Company v. Department of Agriculture and Consumer Services, 550 So.2d 112 (Fla. 1st DCA 1989); City of Pompano Beach v. Haggerty, 530 So.2d 1023 (Fla. 4th DCA 1988); Seaboard System Railroad, Inc. v. Clemente, 467 So.2d 348 (Fla. 3d DCA 1985). Following review of the supplemental briefs and record, we hold that the $25,000.00 forfeited, which was advanced by Mrs. Mills, was not sufficiently shown by "clear and convincing" evidence to have been intended to be used in furtherance of a criminal enterprise, upon the authority of Department of Law Enforcement v. Real Property, supra. Turning to the remaining $55,000.00, we find that the evidence did meet the test as being "clear and convincing", that it was to be used in furtherance of a criminal enterprise. Fitzgerald v. Metro Dade County, 508 So.2d 747 (Fla. 3d DCA 1987); Lobo v. Metro Dade Police Department, 505 So.2d 621 (Fla. 3d DCA 1987); United States v. $41,305.00 in Currency and Travelers Checks, 802 F.2d 1339 (11th Cir.1986). We do not find Lobo v. Metro Dade Police Department, supra to require a different result as to the $55,000.00. In the instant case there was no adequate explanation of the source of the funds, their intended purpose, etc. Whereas in Lobo, supra, there was an adequate explanation of the source of the funds, and its intended use, without any evasion on the part of the one in possession of the cash. Which is not the situation in the instant case.
Therefore, so much of the final judgment under review that forfeited $25,000.00 belonging to Mills is reversed. The remainder of the final judgment is affirmed and this matter is returned to the trial court for further proceedings consistent with this opinion and decision.
Affirmed in part and reversed in part.
SCHWARTZ, C.J., concurs.
GERSTEN, Judge.
I respectfully concur in part, and dissent in part.
This case involves Metro-Dade's forfeiture of $80,000 pursuant to the Florida Contraband Forfeiture Act (Act). §§ 932.701-.704, Fla. Stat. (1989). The $80,000 included money owned by two people, Clara Mills (Mills), and Andrew Fletcher (Fletcher).
Mills and Fletcher own businesses. Mills testified that her portion of the $80,000 was to be used to purchase lighting equipment *268 for her nightclub. Fletcher testified that his portion of the $80,000 was to be used to purchase video games for his pool hall.
The majority finds that the forfeiture of Mills's money fails to meet the clear and convincing standard required by Department of Law Enforcement v. Real Property, 588 So.2d 957 (Fla. 1991), and reverses the forfeiture. The majority affirms the forfeiture of Fletcher's money.
I concur in the majority opinion inasmuch as it reverses the forfeiture of Mills's money. However, I must dissent because I find that the forfeiture of Fletcher's money was also not supported by clear and convincing evidence. See Department of Law Enforcement v. Real Property, 588 So.2d at 959.
Dade County alleges two bases for this forfeiture: (1) an alleged nexus between the drugs previously seized in Fletcher's pool hall and the forfeited money; and (2) that the money was intended for the purchase of drugs in Miami. Both reasons are insufficient: (1) to establish probable cause, or (2) to support the forfeiture.
Due process requires the State to establish probable cause to show that the property was used in the commission of a crime pursuant to the terms of the Act. Department of Law Enforcement v. Real Property, 588 So.2d at 963-64.
The only evidence the majority states to establish probable cause is:
Fletcher's money came from a business involved in narcotics transactions, as evidenced by the fact that Fletcher's business premises in North Carolina was searched prior to the seizure of the money herein, that search, with a warrant, produced 16 individual bags of marijuana and 79.5 grams of cocaine, and Fletcher's money can easily be connected to a criminal activity.
However, the search of Fletcher's pool hall not only took place fifteen months prior to the seizure, but someone else, not Fletcher, was charged and convicted for trafficking drugs. Fletcher was not charged with any wrongdoing.
There was no nexus shown between the seizure at Fletcher's business and Fletcher, or Fletcher's money. There was no competent evidence to conclude that the money had been, or was actually employed as, an instrumentality in the commission of a felony. Therefore, the money is not contraband, and the order of forfeiture must be reversed. Williams v. Miller, 433 So.2d 33 (Fla. 5th DCA 1983).
Regardless of the existence of probable cause, lack of knowledge by Fletcher that the property was being employed in criminal activity, is a defense which would defeat the forfeiture action. Department of Law Enforcement v. Real Property, 588 So.2d at 967-68.
The defense of innocent ownership is established by a preponderance of the evidence. Department of Law Enforcement v. Real Property, 588 So.2d at 967-68. The majority states that "there was no adequate explanation of the source of the funds, their intended purpose, etc."
However, Fletcher introduced voluminous evidence that the money was legally acquired and was to be legitimately used: business records showing the yearly profits of the business; audited accounting records by a C.P.A.; and daily income sheets. Fletcher testified about his "project" for the video games he intended to purchase in Miami.
Fletcher testified that he wanted to buy video game machines for his business, and for placement in small shops around town. He spoke to several distributors and travelled to Florida to price video games and lighting equipment. Miami, according to Fletcher, had the lowest prices.
Metro-Dade's evidence consisted of expert testimony that the money, packaged with rubber bands in a shoe box, was consistent with methods employed by drug dealers. Metro-Dade also presented the testimony of a Metro-Dade police officer who testified about the contents of North Carolina police reports, a North Carolina search warrant, and the affidavits in support *269 of the North Carolina warrant.[1] Yet none of the evidence presented on behalf of the forfeiture, contradicted Fletcher's and Mills's testimony.
It is axiomatic that "uncontradicted testimony must be accepted as proof of a contested issue." Howell v. Blackburn, 100 Fla. 114, 129 So. 341 (1930); Levy v. Cox, 22 Fla. 546 (1886); Florida East Coast Railroad v. Michini, 139 So.2d 452 (Fla. 2d DCA 1962), cert. discharged, 152 So.2d 171 (Fla. 1963).
In Duncanson v. Service First, Inc., 157 So.2d 696 (Fla. 3d DCA 1963) this court stated:
We are duty bound not to disturb the findings of fact of a trial judge in a case heard without a jury where such findings are based upon conflicting competent evidence. However, where the testimony on the pivotal issues of fact is not contradicted or impeached in any respect, and no conflicting evidence is introduced, these statements of fact cannot be wholly disregarded or arbitrarily rejected. Rather, the testimony should be accepted as proof of the issue for which it is tendered, even though given by an interested party, so long as it consists of fact, as distinguished from opinion, and is not essentially illegal, inherently improbable or unreasonable, contrary to natural laws, opposed to common knowledge, or contradictory within itself. [Citations omitted.]
This rule holds true for civil and criminal cases. See, e.g., Merrill Stevens Dry Dock Co. v. G & J Investments Corp., 506 So.2d 30 (Fla. 3d DCA), review denied, 515 So.2d 229 (Fla. 1987); State v. Moreno, 558 So.2d 470 (Fla. 3d DCA 1990).
Because both claimants' unimpeached evidence proved innocent ownership, the forfeiture should be reversed and the money should be returned to both claimants. See Eig v. Insurance Company of North America, 447 So.2d 377 (Fla. 3d DCA 1984).
Lastly, this forfeiture is plagued by a fatal flaw. Metro-Dade argued that the trip to Miami with the $80,000 was in fact an attempt to purchase drugs:
We will prove that the $80,000 that came from Asheville, North Carolina ... came here for the purpose of purchasing narcotics.
Thus, if we accept Metro-Dade's position, the interception of the money prevented the transaction from graduating from an attempt to purchase drugs to a perfected drug purchase.
Section 932.703(1), Florida Statutes (1989), provides for forfeiture of any personal property "which has been or is being used in violation of section 932.702." The statute does not include either attempts or attempted uses. Coleman v. Brandon, 426 So.2d 44 (Fla. 2d DCA 1982); review denied 430 So.2d 450 (Fla. 1983). "We must not broaden the scope of legislative enactments where the language of the statute is clear." Coleman v. Brandon, 426 So.2d at 44; see Thayer v. State, 335 So.2d 815 (Fla. 1976).
The fact that the money could have been used for an impermissible purpose is insufficient to support the forfeiture. The mere ability to use property in violation of the Act does not subject that property to forfeiture. In re Forfeiture of a Cessna 421 Aircraft, Reg. No. N42A, 450 So.2d 1138 (Fla. 4th DCA 1984).
In Department of Law Enforcement v. Real Property, 588 So.2d at 967-68, the Florida Supreme Court stated:

*270 In forfeiture proceedings the state impinges on basic constitutional rights of individuals who may never have been formally charged with any civil or criminal wrongdoing. This Court has consistently held that the constitution requires substantial burdens of proof where state action may deprive individuals of basic rights.
Because Metro-Dade did not have probable cause to seize the currency, because the claimants proved innocent ownership, because the state failed to give the claimants a fair hearing, and because attempted drug activity does not justify forfeiture, I would also reverse that part of the forfeiture relating to the money owned by Fletcher.
Accordingly, I concur in part, and dissent in part.
NOTES
[1] Drug Enforcement Agency.
[1] Above and beyond the problems with probable cause and innocent ownership, this case also presents a plethora of procedural shortcomings, any one of which may have deprived the claimants of a fair hearing. The most obvious error being the introduction and reliance on multiple level hearsay evidence. See, e.g., Barnes v. State, 589 So.2d 988 (Fla. 1st DCA 1991).

Both the order of forfeiture below and the majority opinion rely on the hearsay evidence to find a nexus between the money and illegal drug activity. Such "evidence" should not have been admitted, or considered. See In re Forfeiture of $7,775.78 U.S. Currency, 477 So.2d 670 (Fla. 4th DCA 1985).
Although a harmless error analysis could be applied to some of the individual errors, I find that the cumulative effect served to deprive appellants of a fair hearing.