DANAHY, Acting Chief Judge.
MediTek Therapy, Inc., the defendant in this suit, appeals an order denying its motion to dissolve a temporary injunction entered without notice in favor of the plaintiff, Vab-Tech, Inc. We reverse because there was insufficient evidence to support the issuance of the temporary injunction.
Vab-Tech is the manufacturer of a patented chiropractic treatment table and MediTek is Vat-Tech’s exclusive distributor. The parties’ business relationship is founded on their written contract which includes the following confidentiality provision:
Without Vab-Teeh’s prior written consent, MediTek shall not use, directly or *645 indirectly, any trademark or trade name which is now or hereafter owned by Vat-Tech. MediTek agrees that it will not, through any partnership, firm, corporation or any other form whatsoever, either directly or indirectly, allow or participate in the copying or reproduction of the Equipment nor allow others to inspect the Equipment with the intention of copying or reproducing said Equipment so as to constitute an intention or attempt to infringe on the Patents and/or Patents Pending for said Equipment.
[[Image here]]
The parties agree that [MediTek] will not, through any partnership, firm, corporation or any other form whatsoever, either directly or indirectly, allow or participate in the copying or reproduction of VAT-TECH’s Products nor allow others to inspect the Products with the intention of copying or reproducing said Products.
In its complaint, Vat-Tech alleged that MediTek conspired with others and breached this confidentiality provision, which warranted the issuance of a temporary injunction. The trial court agreed and issued the temporary injunction. At the hearing on Medi-Tek’s motion to dissolve the injunction, the following evidence of the events leading to this suit was adduced.
Dr. Allan Dyer, president of Vat-Tech, Inc., learned that two representatives of a Korean distributor and manufacturer of chiropractic equipment had flown from California to Tampa to visit MediTek’s facility. Dr. Dyer, who was not present during this visit, was told that the Koreans, in Tampa for less than a day, had inspected and photographed the table, and given their host, Mr. Randy Sklar, MediTek’s director of business development, a quote of the price their company would charge to manufacture the table. Dr. Dyer, holder of the patent and justifiably alarmed that someone not sanctioned by him was giving manufacturing price quotes, concluded that the Koreans had inspected and photographed the secret inner mechanism of the table in order to give the manufacturing quote. He believed that no one could or would give such a quote without seeing the inner workings of this specialized equipment.
Dr. Dyer’s knowledge of the Koreans’ visit and what transpired during their visit was based on what he had been told (1) by a former president of MediTek and by the president of MediTek’s sub-distributor, both of whom had heard about the visit but who had not been present, and (2) by the current president of MediTek and Mr. Sklar when Dr. Dyer asked the latter two about the visit in a telephone conversation. In addition to Dr. Dyer, MediTek’s current president as well as Mr. Sklar testified at the hearing on the motion to dissolve. Mr. Sklar was the only person testifying who had first-hand knowledge of the events that transpired on the day the Koreans visited MediTek’s showroom in Tampa since he was the one who conducted the meeting and dealt with the Koreans exclusively.
According to Mr. Sklar’s testimony, a representative of the Korean company called him from California expressing interest in the product after seeing MediTek’s marketing materials. Mr. Sklar then scheduled a meeting with the two representatives. When the Koreans arrived in Tampa after an overnight flight from California, Mr. Sklar gave them the routine sales presentation which included a non-therapeutic treatment demonstration on one of the Koreans. During the entire presentation MediTek’s technician actually operated the equipment and performed the non-therapeutic treatment.
One of the Koreans took photographs of the table; he also took photos of the second Korean receiving the demonstration treatment. Mr. Sklar allowed the Koreans to photograph only the exterior of the table because he knew similar photographs of the table were published in the marketing materials. According to Mr. Sklar, the Koreans never observed or photographed the secret patented inner mechanism of the table. It was only at the end of the meeting that the Koreans informed Mr. Sklar that they represented a company that not only distributed chiropractic equipment but manufactured it as well. It was at this point that Mr. Sklar asked them at what cost they thought their company could manufacture the table. The Koreans gave a price quote substantially lower than the current manufacturing cost. Mr. Sklar testified that this entire exchange about manufacturing came at the very end of the more than two-hour visit and lasted *646 about thirty seconds. Mr. Sklar then took the Koreans to lunch and afterwards saw them to the airport. After the visit Mr. Sklar freely told others in his office of the events which took place during the visit, including the fact that the Koreans had photographed the table and given a manufacturing price quote to him.
There was also evidence that one secretary to whom Mr. Sklar related the events of the meeting told MediTek’s former president what Mr. Sklar had said. This former president of MediTek then conveyed the information to Dr. Dyer. MediTek’s current president, after hearing what Mr. Sklar related to him about the meeting, mentioned it later to the president of the sub-distributor who then passed the information on to Dr. Dyer.
We find the evidence adduced at the hearing insufficient to support the trial court’s ruling that MediTek had breached the confidentiality agreement which prohibited MediTek from allowing others to inspect Vat-Tech’s products with the intention of copying or reproducing the products. Mr. Sklar conducted a routine sales presentation to a prospective buyer and allowed the prospect’s representatives to inspect and photograph the exterior of the table with the intent of selling tables to them. Mr. Sklar learned of the manufacturing capability of the company the Koreans represented only at the very end of the visit at the showroom after the inspecting and photographing were completed. The Koreans’ visit was arranged and conducted upon Mr. Sklar’s understanding that the Korean company was interested in buying, not manufacturing, tables for the Korean chiropractic market.
In determining whether there was competent substantial evidence to support the trial court’s decision, we, of course, do not reweigh the evidence heard by the trial court. Mr. Sklar presented unrebutted factual evidence, in contrast to Dr. Dyer’s opinions, speculations, and suspicions as to what had occurred during the Koreans’ visit. Mr. Sklar’s unrebutted factual testimony showed that MediTek had not breached the confidentiality agreement. Since Mr. Sklar’s testimony on the pivotal issue of what occurred during the Koreans’ visit was not rebutted or contradicted in any manner, it cannot be disregarded or rejected by the trial court unless it was illegal, inherently improbable or unreasonable, contrary to natural law, opposed to common knowledge or contradictory within itself. Florida East Coast Ry. v. Michini, 139 So.2d 452 (Fla. 2d DCA 1962); accord Roach v. CSX Transp., Inc., 598 So.2d 246 (Fla. 1st DCA 1992); Fletcher v. Metro Dade Police Dep’t Law Enforcement Trust Fund, 593 So.2d 266 (Fla. 3d DCA 1992); Duncanson v. Service First, Inc., 157 So.2d 696 (Fla. 3d DCA 1963). Mr. Sklar’s testimony suffered from none of these defects and it should have been taken as proof of the events even though given by an interested party. Duncanson, 157 So.2d at 699.
MediTek raises several other issues concerning additional errors including pyramiding of inferences, admitting hearsay testimony, and a conclusion by the trial court that the confidentiality provision prohibited any photographing of the table at all. While we agree with MediTek on these issues, we have no need to discuss them further, given our disposition of this case.
Accordingly, we reverse the trial court’s denial of MediTek’s motion to dissolve the temporary injunction and remand for an order granting the motion.
FRANK and LAZZARA, JJ., concur.