ERVIN, J.,
dissenting.
The majority affirms the default order under the theory that the attempted service of the notice — rather than actual service — was reasonable under the circumstances. What the majority overlooks is that this rule, and the cases espousing it, apply only to circumstances in which an evidentiary hearing was first conducted, and findings made as to the reasonableness of the notice afforded. In stark contrast to such cases, no fact-finding hearing has ever been conducted in the instant case; hence, the record before us is silent regarding the essential issue of whether appellants were accorded procedural due process before the entry of the default order. I would therefore reverse and remand with directions to the Department of Financial Services (DFS) to conduct an administrative hearing on the question of whether the Shelleys received adequate notice of the complaint prior to the default. If it is determined that the appellants did not receive notice, they should be accorded a hearing on the merits of the allegations contained in DFS’s administrative complaint.[1]
The complaint included a notification of rights, informing the Shelleys, pursuant to Florida Administrative Code Rule 28-106.111(4), that they had 21 days after receipt of the complaint within which to petition the Department for an administrative hearing concerning the allegations, and that failure to do so would constitute a waiver of such right. The Department sent a copy of the complaint by certified mail to each of the Shelleys, at the same address in the state of Montana. The Department also served copies of the complaint on Florida’s Secretary of State, pursuant to the long-arm statute. Section 48.181(1), Florida Statutes (2001). The record on appeal does not show that either of the Shelleys received the complaint. The certified mail receipts accompanying the complaints were returned as “unclaimed” more than three months after their issuance. When the Shelleys failed to respond within the time specified, DFS entered the default final order, which is the subject of this appeal. DFS reasoned that appellants had “failed to request an administrative hearing within 21 days after receipt of the Complaint,” notwithstanding notification of such requirement in the complaint; as a result, appellants were deemed to have waived their rights to such hearing. The Shelleys now argue that they “at no time personally received any notice of the Complaint and therefore had no possibility to request an administrative hearing within 21 days.” As stated, there is nothing in the record that refutes this argument.
After receipt of the Department’s order, the Shelleys initially filed a petition to vacate it. Thereafter they presumably abandoned the petition by timely filing the notice of this appeal. The pro se appellants, however, can hardly be faulted for not pursuing this avenue of relief, because the default final order, allegedly the only legal document they received, advised them that they had waived their right to an administrative hearing due to their failure to seek such relief within 21 days after *579 service of the complaint, and the only remedy remaining was to file an appeal within 30 days thereafter.
In support of their argument that the Department’s final default order must be vacated, because they were not afforded procedural due process, the Shelleys cite Department of Law Enforcement v. Real Property, 588 So.2d 957 (Fla.1991), in which the supreme court reiterated certain fundamental principles common to the application of the doctrine:
Procedural due process serves as a vehicle to ensure fair treatment through the proper administration of justice where substantive rights are at issue. Procedural due process under the Florida Constitution
guarantees to every citizen the right to have that course of legal procedure which has been established in our judicial system for the protection and enforcement of private rights. It contemplates that the defendant shall be given fair notiee[ ] and afforded a real opportunity to be heard and defend! ] in an orderly procedure, before judgment is rendered against him.
State ex rel. Gore v. Chillingworth, 126 Fla. 645, 657-58, 171 So. 649, 654 (1936) (citations omitted); accord, e.g., Fuentes v. Shevin, 407 U.S. 67, 80, 92 S.Ct. 1983, 1994, 32 L.Ed.2d 556 (1972) (procedural due process under the fourteenth amendment of the United States Constitution guarantees notice and an opportunity to be heard at a meaningful time and in a meaningful manner). The manner in which due process protections apply vary with the character of the interests and the nature of the process involved.
Id. at 960. The court particularly observed that “[tjhere is no single, inflexible test by which courts determine whether the requirements of procedural due process have been met.” Id.
The rule above cited is altogether applicable to the facts at bar. The Shelleys are not claiming that they were entitled to actual rather than constructive notice, but that the constructive notice did not reach them. Although it is the law that a rebut-table presumption of receipt arises from proof of mailing, Home Ins. Co. v. C & G Sporting Goods, Inc., 453 So.2d 121, 123 n. 3 (Fla. 1st DCA 1984), nevertheless, “[t]he Florida Administrative Code contains no provision requiring that receipt of the notice be irrefutably presumed following an allegation of mailing.” Accardi v. Dep’t of Envtl. Protection, 824 So.2d 992, 995 (Fla. 4th DCA 2002) (holding that a fact-finder must determine whether appellants received the agency’s written notice notifying them that they had 21 days in which to seek a hearing).
An evidentiary hearing should therefore be held to determine whether the Shelleys did not receive notice through no fault of their own. See, e.g., Applegate v. Nat’l Health Care Affiliates, Inc., 667 So.2d 332 (Fla. 1st DCA 1995) (reversing dismissal of an appeal to the Unemployment Appeals Commission to determine whether Apple-gate was precluded from filing a timely appeal by appellee’s failure to mail timely notice of the final determination); Southeastern Termite & Pest v. Ones, 792 So.2d 1266 (Fla. 4th DCA 2001) (reversing denial of motion to vacate clerk’s default for evi-dentiary hearing to determine whether appellant was personally served with process); Richardson v. Dep’t of Revenue, 742 So.2d 445 (Fla. 4th DCA 1999) (reversing for an evidentiary hearing, because appellant’s sworn motion to vacate paternity judgment sufficiently raised an issue of fact as to whether he received notice of the hearing); Venetoff v. Papas, 732 So.2d 453, 454 (Fla. 2d DCA 1999) (“A party is enti- *580 tied to an evidentiary hearing when the issue of whether notice was received has been raised.”). As the Fifth District stated in Power v. Grow Group, Inc., 697 So.2d 1286 (Fla. 5th DCA 1997), when it reversed the summary denial of a motion to set aside final summary judgment:
Generally, where one party alleges that she did not receive notice of a hearing which resulted in a judgment against her, and the other party disputes this contention, an evidentiary hearing is required to resolve the matter. The court cannot determine the credibility of appellant’s claim of lack of notice without hearing her evidence. The court is not bound to believe her, but it is bound to hear her.
Id. at 1287 (citations omitted).
The Department also seeks to justify its order by arguing that it served a copy of the administrative complaint on the Secretary of State pursuant to section 48.181, Florida Statutes (2001), and that such substituted service was sufficient under the facts. I cannot agree. The appellants state that they never received a copy of the complaint from the Secretary of State, and, as I earlier explained, nothing in the record refutes this assertion. Indeed, there is no showing that the Secretary of State attempted to forward a copy of the complaint to them, as required by section 48.161(1), Florida Statutes (2001). The law is clear that one seeking to effect substituted service under this statute has the burden of presenting facts which clearly justify the applicability of such method of service. See George Fischer, Ltd. v. Plastiline, Inc., 879 So.2d 697, 699 (Fla. 2d DCA 1980).
The procedure for service set out in section 48.181 must comply with the prerequisites established in section 48.161, relating to the method of substituted service on nonresident defendants. The Second District described the interrelationship of the two statutes in the following terms:
If the plaintiff chooses substituted service on the Secretary of State under Section 48.181(1), then perfection of such substituted service requires full compliance with one of the alternative methods provided by Section 48.161. Section 48.161 requires such substituted service be perfected and evidenced by either: (1) registered or certified mailing to the nonresident of both a notice of such substituted service and a copy of the process, evidenced by the filing of the nonresident’s return receipt and an affidavit of compliance by plaintiff or his attorney; or, (2) an appropriate officer’s return showing service on the nonresident within or without this state.
P.S.R. Assocs. v. Artcraft-Heath, 364 So.2d 855, 857-58 (Fla. 2d DCA 1978). The record before us fails to disclose conformance with either of the above two methods.
The only argument the Department offers for not following the dictates of section 48.161 is that the Shelleys refused to accept service of earlier mail DFS had sent them. Once again, nothing in the record remotely indicates that the Shelleys intentionally refused or avoided service. The letters mailed to the Shelleys and returned were marked “unclaimed,” not “refused.” Moreover, the extraordinary length of time from the date the copies of the complaint were mailed until the unclaimed mail receipts were returned reasonably implies that the mailed complaints may never have been delivered to the Shelleys. Because the appellants were not furnished an evidentiary hearing on the issue of service, we obviously have no basis on which to make any determination of whether they deliberately refused to accept service. As this court observed in All Mobile Video, Inc. v. Whitener, 773 So.2d *581 587 (Fla. 1st DCA 2000): “[I]n order to comply with section 48.161, plaintiffs who seek to employ substituted service but fail to obtain a return receipt must allege that the defendant is ‘concealing his whereabouts, or that they had exercised due diligence in attempting to locate him.’” Id. at 590 (quoting Chapman v. Sheffield, 750 So.2d 140, 143 (Fla. 1st DCA 2000)).
Because I am firmly convinced that the procedure the Department used to effect service on the Shelleys did not comport with due process, I would reverse the default final order and remand for further proceedings consistent with this dissent.

. The complaint alleged that during the time the Shelleys conducted business in the state of Florida, neither they nor the securities they had sold were registered with the DFS.